J. David Bournazian, SBN 186194
David.Bournazian@klgates.com
**K&L GATES LLP**
1 Park Plaza, Twelfth Floor
Irvine, California 92614
Telephone: +1 949 253 0900
Facsimile: +1 949 253 0902

Christopher S. Finnerty, *(Pro Hac Vice)*
Chris.Finnerty@klgates.com
**K&L GATES LLP**
One Congress Street, Suite 2900
Boston, Massachusetts 02114
Telephone: +1 617 261 3123
Facsimile: +1 617 261 3175

*Attorneys for Defendant*
*Bang & Olufsen America Inc.*

Jeffrey Tsai (SBN 226081)
  jeff.tsai@us.dlapiper.com
Colin McGrath (SBN 351947)
  colin.mcgrath@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars,
Suite 400 North Tower
Los Angeles, CA 90067-4735
Tel: 310.595.3000 | Fax: 310.595.3300

Sam Bodle (SBN 338507)
  sam.bodle@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500 | Fax: 415.836.2501

*Attorneys for Plaintiff*
*M&N LUXURY AV, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M&N LUXURY AV, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BANG & OLUFSEN AMERICA INC. a Delaware Corporation; BANG & OLUFSEN A/S, a Danish Company; B&O PLAY A/S, a Danish Company; BANG & OLUFSEN OPERATIONS A/S, a Danish Company; and DOES 1-25,<br><br>Defendants. | Case No. 2:24-cv-02230-DSF-KES<br><br>*[Discovery Document: Referred to Magistrate Judge Karen E. Scott]*<br><br>[~~PROPOSED~~] **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge: Hon. Dale S. Fischer<br><br>Magistrate Judge: Hon. Karen E. Scott<br><br>Complaint Filed:   March 5, 2024<br>Discovery Cut-Off:  June 30, 2025<br>Las Day for Motion<br>Hearings:      January 26, 2026<br>Pre-Trial Conference<br>Date:        April 6, 2026<br>Trial Date:     May 5, 2025 |

The undersigned Parties to the above-captioned case (the "Litigation"), through their respective counsel, agree that the terms and conditions of this Protocol for Conducting Electronic Discovery ("ESI Protocol") shall govern the search for, disclosure of, and format of electronically stored information ("ESI") and Documents.

Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS:**

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

### 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. The Parties shall conduct discovery in a cooperative manner, including without limitation, by meeting and conferring in good faith on any preservation, collection, review, and production issues that arise during the course of discovery.

### 3. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. SOURCES OF DISCOVERABLE INFORMATION

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

In order to facilitate discussions on the potential application of search terms, technology assisted review ("TAR"), or other search and culling technologies, the producing Party shall provide in writing a list of custodians and/or data sources within that Party's control likely to contain or possess responsive documents. The Parties shall also meet and confer if any Party reasonably believes that there are additional custodians or data sources likely to contain or possess unique, responsive information that should be subject to discovery in this matter.

If, upon investigation, a Party determines that a custodial or non-custodial data source is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B), the party shall identify why it considers the information not reasonably accessible. If the requesting party intends to seek discovery on these data sources, the Parties shall meet and confer and, if necessary, seek resolution by the Court.

Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.    Deleted, slack, fragmented, or other data only accessible by forensics.

    b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating

system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Back-up data that are duplicative of data that are more accessible elsewhere.

e. Server, system or network logs.

f. Data remaining from systems no longer in use that is unintelligible on the systems in use.

g. Data stored on photocopiers, scanners, and fax machines.

h. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided the data is available from another source and is not unique to that mobile device.

**5. SEARCH**

To the extent a party elects to use search terms as a means of limiting the volume of information to be reviewed for responsiveness, prior to conducting any such searches, that party shall disclose the following to requesting party:

- A list of the custodians and custodial and/or non-custodial data sources against which the search terms will be applied; and
- An initial list of the search terms the party plans to use.

After receipt of the proposed search terms, the Parties shall meet and confer to attempt to reach agreement on the search terms.

That a document is captured by a search term does not mean such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation or any required disclosure. Likewise, the use of search terms will not preclude the parties' use of other reasonable techniques to further identify relevant or irrelevant documents, including, but not limited to, analytics, predictive coding, and other technology assisted review.

To the extent a Party intends to apply TAR to exclude potentially responsive documents from human review, that Party shall meet and confer in advance, regardless of when the Party intends to apply TAR. That meet and confer shall include a discussion of the document population to which the Producing Party intends to apply TAR and the appropriateness of applying TAR to that population. To the extent the Parties cannot reach agreement on the application of, or procedures for, any TAR process used to exclude potentially responsive documents from human review, the Parties may raise such issues for resolution by the Court or its designee.

### 6. ANALYSIS OF DOCUMENTS

#### a. Deduplication

The Parties shall de-duplicate exact copies on a family level (e.g., an email and all attachments) based on hash values (e.g., MD5, SHA1, etc.). Documents will be de-duplicated using MD5 or SHA1 hash values, or an agreed upon de-duplication method that accounts for all potentially relevant metadata fields, including BCC. For each document family produced, the names of other custodians who possessed that document family shall be indicated in the "AllCustodians" metadata field, and the file paths associated with the de-duplicated document shall be indicated in the "All_Paths" metadata fields, in accord with Appendix A. For hard copy documents, if there are any handwritten notes, or any other markings or additions, on a document including but not limited to electronic notes/tabs, edits, highlighting or redlining, it shall not be considered a duplicate of the underlying document. If such markings/alterations are made in color, the document must be produced in color.

#### b. Email threading

The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy of each email thread and its related

family members. The parties must maintain all parent-child relationships, i.e., if a lesser inclusive email has attachments not attached to the more inclusive email, the lesser inclusive email and attachments must be produced in their entirety. The parties may choose to exclude otherwise lesser inclusive copies from production. Upon reasonable request, the producing party will produce any less inclusive copies excluded from production.

***Password protected or encrypted files.*** With respect to any password-protected or encrypted documents that are encountered during processing, the Producing Party will take reasonable and proportional steps to resolve the protection so that the documents can be reviewed and produced if appropriate.

### 7. PRODUCTION FORMATS

#### a. Electronically Stored Information

##### i. TIFF file productions

The Parties shall produce all documents that are deemed responsive and not privileged in 300 DPI Group IV black and white Tagged Image File Format (.TIFF or .TIF) files. The TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). Upon written request, the producing Party shall produce color images, if available, for a reasonable number of selected documents. In certain circumstances, variations to the production format specified in this Order may be necessary. In such circumstances, the Parties will meet and confer regarding the production format. Any document that is not reviewable, but is otherwise part of a produced document family, shall be represented in the production with a placeholder TIFF image that bears the legend "Technical Issue," along with its corresponding metadata in the Concordance DAT file. To the extent the technical issue is not apparent (e.g., file extension is .EXE), the Parties will meet and confer.

### ii. Text files

The full text of each electronic document shall be extracted from the native file ("Extracted Text") and produced with each text file corresponding to a single document in the production. The Extracted Text shall be in ASCII text format (or Unicode text format if the text is in a foreign language) and named with a unique Bates Number (*i.e.* the unique Bates Number of the first page of the document followed by .txt).

### iii. Database load files

All ESI should be produced with an ASCII delimited data file (.dat) that contains the metadata fields listed in Appendix A, attached hereto, that can be loaded into a commercially acceptable electronic discovery platform (e.g. Relativity). The first line of each delimited data file must contain a header identifying each data field name (i.e., header row). To the extent metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, nothing in this Order shall require any party to extract, capture, collect, or produce such data.

### iv. Cross-reference image file registration

All ESI should be produced with an image load file (.opt) linking each page in the production to a single document record. Each TIFF in a production must be referenced in the corresponding image load file.

### v. Native file productions

Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, presentation, audio and video, database, and drawing files, will be produced in native format. The parties may elect to utilize native redaction software tools such as "Blackout" to apply redactions directly to a native spreadsheet and produce a redacted native file instead of a TIFF image of a spreadsheet. If a document is produced in native format, a

single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. Each native file should be named for its Bates number with its original file extension, and should be linked directly to its corresponding record in the load file using the NativeFileLink field.

### b. Hard copy documents

The producing party may produce documents as black-and-white images unless color is necessary to understand the meaning, content, or context of the document. If a document contains color-coded information, highlights, annotations, or other elements where color is material to its interpretation, it shall be produced in color. Any receiving party may request that a document originally produced in black and white be re-produced in color upon a showing that the color version is necessary for review or evidentiary purposes. All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The producing party shall use Optical Character Recognition (OCR) software settings that prioritize text recognition accuracy over processing speed. OCR shall be performed using settings that maximize text quality and the producing party shall take reasonable steps to enhance OCR accuracy, including but not limited to adjusting settings for complex documents.

All image files and text files shall be named the same as the starting Bates number for each document. Each TIFF image shall be endorsed with Bates numbers that increment by one for each page. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The

text and image load files should indicate page breaks.

Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting 75% or higher. The requesting Party may also request, in writing, that the producing Party produce color images for a reasonable number of selected documents that were originally produced in black and white. Each such color document image file shall be named with the unique Bates number of the first page of the document in question followed by the file extension JPG or PDF. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

### c. Redactions

The parties agree that documents redacted for privilege or other good reason will be produced without native files, full text and/or OCR, and certain metadata values including but not limited to SUBJECT, PATH AND FILENAME. The PRODUCTION HAS REDACTIONS field in the production load file field should be populated to indicate the document contains a redaction.

### d. Mobile data

Mobile data, such as text messages or app-based messages, should be produced with all metadata in accordance with Appendix A, preserving the original context or conversation in which the text or app-based message appeared, and otherwise in accordance with the requirements of this Order.

### e. Other documents or data

Before any party produces certain structured or other electronic data that is not easily converted to static TIFF images, such as databases, CAD drawings, GIS data, videos, websites, social media, etc., the parties will meet and confer to discuss the appropriate format for the production.

### f. Families

Parent-child relationships (i.e., the association between emails and their attachments) will be maintained in the collection and production process to the extent practicable. Attachments will be consecutively produced with the parent email record. If an attachment is privileged, not responsive, or has a technical issue, a slip sheet may be inserted in the production.

### g. Bates numbering

Each page of a document produced in image format by a Defendant will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. Each file produced in native format will be named according to the next consecutive Bates number. The Bates number will be consistent across the production, contain no special characters other than a hyphen or underscore, identify the producing Party, and be numerically sequential within a given document. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

### h. Hyperlinked documents

Documents containing internal hyperlinks pointing to documents on a system within a producing party's custody, possession, or control (such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, or similar document hosting and collaboration service) are not considered within the same family group as the document residing at the location to which that hyperlink points. If there are responsive documents containing hyperlinks where the document to which that hyperlink points cannot be located in the production, the receiving party may request that the Producing Party will engage in reasonable efforts to locate the documents as originally linked at that

pointed location and either identify it by Bates number or provide it if not already produced and not privileged.

### i. Metadata to be produced

All materials shall be produced with the metadata specified in Exhibit A. The list of fields in Exhibit A does not create any obligation to create or manually code fields that are not automatically generated by the processing of documents, that do not exist as part of the original metadata of the document, or would be unduly burdensome or costly to obtain. To the extent that objective metadata (e.g., dates, titles, authors) is coded at the time hardcopy documents are processed, that objective metadata shall be produced with the hardcopy document. Where a producing Party produces more than one production volume, whether in a single delivery or on a rolling basis over time, that producing Party shall provide periodic overlays on a reasonable cadence to update the metadata fields "AllCustodians" and "All_Paths" to account for records in later volumes. If there is a dispute as to the frequency of such overlays, the Parties shall meet and confer to arrive at an agreed resolution.

### j. Production media

The producing Party may produce documents via a secure file transfer mechanism or on readily accessible, computer or electronic media. Each piece of production media will be assigned a production number, volume name or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production.

### k. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the

encrypted media.

## 8. KNOWN RESPONSIVE MATERIAL MUST BE PRODUCED

Documents that are known to the Parties or the Parties' Counsel to be non-privileged and responsive to a discovery request in this matter, and not otherwise subject to a Rule 34 objection by the Producing Party or excluded by virtue of a Court order limiting discovery, shall not be intentionally withheld from production because they were not indicated for inclusion in the review population by a search term or another search technique, except that privileged documents in such a collection may be withheld and listed in a privilege log. These provisions do not affect the Parties' respective obligations with respect to supplementation under Fed. R. Civ. P. 26(g).

## 9. NON-PARTY PRODUCTIONS

The Parties may provide a copy of this Order to each recipient of a Rule 45 Subpoena seeking the production of documents in this matter and request that the non-party agree to follow the various provisions as to format set forth in this section. Non-parties may elect to follow these provisions, or may otherwise meet and confer with the requesting Party as to the format of any document productions.

## 10. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer and to agree as necessary on phasing the production of ESI.

## 11. DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-

protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

The producing party may seek the return and/or destruction of any document produced in response to discovery requests in this action that the party later claims should have been withheld on grounds of a privilege ("Protected Information"). A party may request the return of such a document by promptly notifying the receiving party, identifying the document by Bates number, and stating the basis for withholding such document from production. The receiving party must promptly return, sequester or destroy (or in the case of ESI, delete) the Protected Information and any reasonably accessible copies it has and provide a certification that it will cease further review, dissemination, and use of the Protected Information. Notwithstanding the forgoing, the receiving party may contest the privilege claim by seeking an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. Pending resolution of the Disclosure Motion, the receiving party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

## 12. PRIVILEGED COMMUNICATIONS AND PRIVILEGE LOGS

The Parties will prepare privilege logs and will work cooperatively to reach agreement on the form, format and content of the privilege logs prior to exchange of those logs.

## 13. FOREIGN LANGUAGE DOCUMENTS

To the extent that responsive Documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language Documents and ESI in the original language. The Producing

1 Party has no obligation to create a translation of the foreign language Documents or ESI or any portion thereof. The cost of translation will be borne by the Requesting Party.

**14. DISPUTE RESOLUTION**

The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**15. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: March 31, 2025                                  K&L GATES LLP

                                                       By:  */s/ Christopher S. Finnerty*
                                                            J. David Bournazian
                                                            Christopher S. Finnerty (pro hac)

                                                            Attorneys for Defendant
                                                            Bang & Olufsen America Inc.

DATED: April 1, 2025                                   DLA PIPER LLP

                                                       By: */s/ Jeffrey Tsai*
                                                           JEFFREY TSAI
                                                           COLIN MCGRATH
                                                           SAM BODLE

                                                           *Attorneys for Plaintiff*
                                                           *M&N LUXURY AV, LLC*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: April 1, 2025                        /s/ Karen E. Scott
                                            Honorable Karen E. Scott
                                            UNITED STATES MAGISTRATE JUDGE