1  J. David Bournazian, SBN 186194
   David.Bournazian@klgates.com
2  **K&L GATES LLP**
   1 Park Plaza, Twelfth Floor
3  Irvine, California 92614
   Telephone: +1 949 253 0900
4  Facsimile: +1 949 253 0902

5  Christopher S. Finnerty, *(Pro Hac Vice)*
   Chris.Finnerty@klgates.com
6  **K&L GATES LLP**
   One Congress Street, Suite 2900
7  Boston, Massachusetts 02114
   Telephone: +1 617 261 3123
8  Facsimile: +1 617 261 3175

9
   *Attorneys for Defendant*
10 *Bang & Olufsen America Inc.*

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  M&N LUXURY AV, LLC, a California limited liability company, | Case No. 2:24-cv-02230-DSF-KES |
| 17  Plaintiff, | **BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT** |
| 18  v. | |
| 19  BANG & OLUFSEN AMERICA INC. a Delaware Corporation; BANG & OLUFSEN A/S, a Danish Company; B&O PLAY A/S, a Danish Company; BANG & OLUFSEN OPERATIONS A/S, a Danish Company; and DOES 1-25, | **JURY TRIAL DEMANDED** |
| | Honorable Dale S. Fischer |
| 23  Defendants. | |
| 25  BANG & OLUFSEN AMERICA INC. a Delaware Corporation; BANG & OLUFSEN A/S, a Danish Company; B&O PLAY A/S, a Danish Company; | |

28

320822667.18

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

1  and BANG & OLUFSEN OPERATIONS
2  A/S,

3                          Counterclaim-Plaintiffs,

4

5          v.

6  M&N LUXURY AV, LLC, a
   California limited liability company,
7

8                          Counterclaim-Defendant

9

10 BANG & OLUFSEN AMERICA INC. a
   Delaware Corporation; BANG &
11 OLUFSEN A/S, a Danish Company;
12 B&O PLAY A/S, a Danish Company;
   and BANG & OLUFSEN OPERATIONS
13 A/S,

14                          Third-Party Plaintiffs,

15

16         v.

17 DAVID JUNK,

18                          Third-Party Defendant.

19

20

21

22

23

24

25

26

27

28

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

Defendants Bang & Olufsen America Inc., Bang & Olufsen A/S, B&O Play A/S, and Bang & Olufsen Operations A/S (collectively "Bang & Olufsen", "B&O", or "Defendants") hereby respond to the allegations made in Plaintiff M&N Luxury AV, LLC's ("M&N" or "Plaintiff") Second Amended Complaint for, *inter alia*, breach of contract ("Complaint") filed in the Central District of California on March 18, 2025 as follows:

### Parties

1.      Defendants admit that the First Amended Complaint was filed on October 10, 2024 and deny the remaining allegations in Paragraph 1.

2.      Defendants are without knowledge or information sufficient to admit or deny the allegations in Paragraph 2.

3.      Defendants admit Bang & Olufsen America, Inc. ("BOA") is incorporated under the laws of the State of Delaware, with a principal place of business located in New York City, New York.

4.      Defendants admit that Bang & Olufsen A/S ("BOA/S") is a Danish company with a principal place of business located in Denmark. Defendants further admit that the Parties' counsel agreed that counsel for B&O will accept service on behalf of all named Defendants.

5.      Defendants admit that B&O Play ("BOP") is a Danish company with a principal place of business located in Denmark. Defendants further admit that the Parties' counsel agreed that counsel for B&O will accept service on behalf of all named Defendants.

6.      Defendants admit that Bang & Olufsen Operations A/S ("BOO") is a Danish company with a principal place of business located in Denmark. Defendants further admit that the Parties' counsel agreed that counsel for B&O will accept service on behalf of all named Defendants.

1

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

7.    The allegations contained in Paragraph 7 are not factual allegations that call for a response from Defendants.  To the extent the allegations call for a response, Defendants deny them.

8.    Paragraph 8 contains legal conclusions to which no response from Defendants is required.  To the extent the allegations call for a response, Defendants deny them.

### Jurisdiction and Venue

9.    Defendants admit that this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §1332(a).

10.    Paragraph 10 contains legal conclusions to which no response from Defendants is required.

11.    Paragraph 11 contains legal conclusions to which no response from Defendants is required.

### Facts Giving Rise to the Action

12.    Paragraph 12 contains legal conclusions to which no response from Defendants is required. To the extent the allegations call for a response, Defendants deny them.

13.    Defendants admit that they are in the business of selling consumer electronics, including television sets, speakers, and headphones. Defendants deny the remaining allegations in Paragraph 13.

14.    Defendants admit that they are, among other things, an industry leader in design, manufacturing, distribution, and innovation of high-end consumer audio and visual products, sold worldwide.

15.    Paragraph 15 contains legal conclusions to which no response from Defendants is required. To the extent the allegations call for a response, Defendants admit that there is a document entitled "Licensed Deal Agreement" signed by David

2

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

Junk, which speaks for itself. Defendants deny the remaining allegations in Paragraph 15.

16.    Defendants deny the allegations contained in Paragraph 16.

17.    The agreements between the Parties referenced in Paragraph 17 pertaining to those stores speak for themselves. To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 17.

18.    Defendants admit that the Parties entered into an Agreement titled the "Master Retailer Agreement," which speaks for itself. Defendants deny the remaining allegations in Paragraph 18.

19.    Defendants admit that the Parties entered in an Agreement titled the "Framework Agreement," which speaks for itself. Defendants further state that the allegations contained in Paragraph 19 are legal conclusions to which no response is required.  To the extent a further response is required, Defendants deny the remaining allegations contained in Paragraph 19.

20.    Defendants deny the allegations in Paragraph 20.

21.    Paragraph 21 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 21.

22.    Defendants deny the allegations contained in Paragraph 22.

23.    Defendants deny the allegations in Paragraph 23.

24.    Paragraph 24 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 24.

25.    Paragraph 25 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 25.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

26.     Paragraph 26 contains legal conclusions to which no response is required.

27.     Paragraph 27 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 27.

28.     Paragraph 28 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 28.

29.     Defendants admit M&N has operated up to five stores. Defendants deny the remaining allegations contained in Paragraph 29.

30.     Defendants admit that Plaintiff opened a San Francisco location on or around October 2022.

31.     Paragraph 31 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 31.

32.     Paragraph 32 contains legal conclusions to which no response is required.

33.     Paragraph 33 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 33.

34.     Defendants deny the allegations contained in Paragraph 34 and further assert that the allegations contained in Paragraph 34 are legal conclusions to which no response is required.

35.     Paragraph 35 contains legal conclusions to which no response is required.

36.     Defendants deny the allegations contained in Paragraph 36.

37.     Defendants deny the allegations contained in Paragraph 37.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

38. Defendants deny the allegations contained in Paragraph 38.

39. Defendants deny the allegations contained in Paragraph 39.

40. Defendants deny the allegations contained in Paragraph 40.

41. Defendants deny the allegations contained in Paragraph 41.

42. Defendants admit that they sent Plaintiff a Notice of Termination on February 14, 2024, but deny the remaining allegations contained in Paragraph 42.

43. Paragraph 43 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants admit that they sent a Notice of Termination on May 8, 2024 due to M&N's non-payment. Defendants deny the remaining allegations contained in Paragraph 43.

44. Paragraph 44 contains legal conclusions to which no response is required. Defendants further deny the allegations contained in Paragraph 44.

45. Paragraph 45 contains legal conclusions to which no response is required.

46. Defendants deny the allegations contained in Paragraph 46.

47. Defendants deny the allegations contained in Paragraph 47.

48. Paragraph 48 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations in Paragraph 48.

## FIRST CAUSE OF ACTION

### Breach of Written Contract (Against All Defendants)

49. Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

50. Defendants deny the allegations contained in Paragraph 50.

51. Defendants deny the allegations contained in Paragraph 51.

52. Defendants deny the allegations contained in Paragraph 52.

53. Defendants deny the allegations contained in Paragraph 53.

320822667.18

5

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

54.    Defendants admit that the Parties entered into a Framework Agreement, which speaks for itself.

55.    Defendants deny the allegations contained in Paragraph 55.

56.    Paragraph 56 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 56.

57.    Paragraph 57 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 57.

58.    Paragraph 58 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 58.

59.    Paragraph 59 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 59.

60.    Paragraph 60 does not contain any allegations to which a response is required. To the extent a further response is required, Defendants deny Paragraph 60.

61.    Paragraph 61 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 61.

## SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith & Fair Dealing

### (Against All Defendants)

62.    Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

63.    Paragraph 63 contains legal conclusions to which no response is required.

6

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

64.    Paragraph 64 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 64.

65.    Paragraph 65 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 65.

66.    Defendants deny the allegations contained in Paragraph 66.

**THIRD CAUSE OF ACTION**

**For Violations of CFIL (Against All Defendants)**

67.    Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

68.    Paragraph 68 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 68.

69.    Defendants admit that the Parties entered into an agreement titled Framework Agreement, which speaks for itself.

70.    Paragraph 70 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 70.

71.    Paragraph 71 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 71.

72.    Defendants deny the allegations contained in Paragraph 72.

73.    Paragraph 73 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 73.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

74.    Paragraph 74 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 74.

75.    Defendants deny the allegations contained in Paragraph 75.

76.    Paragraph 76 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 76.

77.    Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77, and therefore deny those allegations.

78.    Paragraph 78 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 78.

79.    Defendants deny the allegations contained in Paragraph 79.

80.    Defendants deny the allegations contained in Paragraph 80 as the Framework Agreement speaks for itself.

81.    Paragraph 81 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 81.

82.    Paragraph 82 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 82.

83.    Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83, and therefore deny those allegations.

84.    Paragraph 84 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 84.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FOURTH CAUSE OF ACTION

### For Declaratory Relief and Injunction (Against All Defendants)

85.     Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

86.     Paragraph 86 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 86.

87.     Paragraph 87 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 87.

88.     Paragraph 88 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 88.

## FIFTH CAUSE OF ACTION

### For Declaratory Relief, Injunction and an Order that Certain Provisions of the Franchise Agreement Are Unenforceable Under *Cal. Civ. Code* §1670.5

### (Against All Defendants)

89.     Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

90.     Paragraph 90 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 90.

91.     Paragraph 91 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 91.

92.     Defendants deny the allegations contained in Paragraph 92.

320822667.18

9

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

93.    Paragraph 93 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 93.

94.    Paragraph 94 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 94.

95.    Paragraph 95 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 95.

96.    Paragraph 96 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 96.

97.    Paragraph 97 contains legal conclusions to which no response is required.

98.    Paragraph 98 contains legal conclusions to which no response is required.

99.    Paragraph 99 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 99.

## SIXTH CAUSE OF ACTION

### For Trade Libel (Against All Defendants)

100.    Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

101.    Paragraph 101 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 101.

320822667.18

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

102.   Paragraph 102 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 102.

103.   Defendants lack information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103, and therefore deny those allegations.

104.   Paragraph 104 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 104.

105.   Paragraph 105 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 105.

106.   Paragraph 106 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 106.

107.   Paragraph 107 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 107.

108.   Paragraph 108 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 108.

109.   Paragraph 109 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 109.

110.   Paragraph 110 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 110.

11

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

## SEVENTH CAUSE OF ACTION

### For An Accounting and for Declaratory Relief (Against BOA)

111.   Defendant BOA repeats and reasserts its responses to each preceding paragraph as though fully set forth herein.

112.   Defendant BOA denies the allegations contained in Paragraph 112.

113.   Defendant BOA denies the allegations contained in Paragraph 113.

114.   Paragraph 114 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 114.

## EIGHTH CAUSE OF ACTION

### For Permanent Injunctive Relief (Against All Defendants)

115.   Defendants repeat and reassert their responses to each preceding paragraph as though fully set forth herein.

116.   Defendants deny the allegations contained in Paragraph 116.

117.   Defendants deny the allegations contained in Paragraph 117.

118.   Defendants admit that they have sent Plaintiffs a series of cease-and-desist notices.  Defendants deny the remaining allegations contained in Paragraph 118.

119.   Paragraph 119 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 119.

120.   Paragraph 120 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 120.

121.   Paragraph 121 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 121.

122.   Defendants deny the allegations contained in Paragraph 122.

123.   Defendants deny the allegations contained in Paragraph 123.

124.   Defendants deny the allegations contained in Paragraph 124.

125.   Defendants deny the allegations contained in Paragraph 125.

**Demand for Jury Trial**

126.   Defendants deny that these are issues triable for a jury.

**PRAYER FOR RELIEF**

The remainder of the Second Amended Complaint sets forth Plaintiff's prayers for relief, to which no response is required.  To the extent that a response is required, Defendants deny that the Plaintiff is entitled to the relief it seeks and pray that the Court dismiss Plaintiff's claims and order such other relief as the Court deems just and necessary.

**AFFIRMATIVE DEFENSES**

Defendants incorporate by reference the denials and admissions set forth above and assert the following affirmative defenses.  Defendants do not intend to assume the burden of proof with respect to those matters as to which the Plaintiff bears the burden.  This statement of defenses is based on Defendants' investigation to date, and Defendants reserve the right to supplement, amend, or withdraw its defenses during the course of litigation as new information is learned.

**First Affirmative Defense**

Plaintiff's claims are barred because Plaintiff has failed to state any claim upon which relief can be granted.

**Second Affirmative Defense**

Plaintiff's claims are barred because the Parties are not in a franchise relationship.

**Third Affirmative Defense**

320822667.18

13

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

### Fourth Affirmative Defense

Plaintiff's claims are barred because Plaintiff has not sustained any damages as a consequence of the conduct allege in the Second Amended Complaint and can state no claim for damages based thereon.

### Fifth Affirmative Defense

Plaintiff's claims are barred because the alleged damages incurred were not proximately or legally caused by Defendants.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's negligence.

### Seventh Affirmative Defense

Plaintiff's claims are barred because of Plaintiff's breach of contract.

### Eight Affirmative Defense

Plaintiff's damages sought is in excess of limitation and barred by contract.

### PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief as follows:

    A.    That Plaintiff's Second Amended Complaint against Defendants be dismissed in its entirety with prejudice and that a judgment be entered in favor of Defendants and against Plaintiff;

    B.    The Court find that Plaintiff and Defendants are not in a franchise relationship; and

    C.    That Defendants be granted all such other and further relief as the Court deems just and proper.

### COUNTERCLAIMS AND THIRD-PARTY COMPLAINT FOR RELIEF

In further response to the Second Amended Complaint, without admitting the burden of proof on any issues and without conceding that this venue is more

320822667.18

14

convenient or equally convenient to other venues in which Plaintiff's claims and Defendants' (collectively, "Bang & Olufsen" or "B&O") counterclaims could be resolved, Bang & Olufsen alleges as follows:

## PARTIES

1.      Third-Party Plaintiff/Counterclaim-Plaintiff/Defendant Bang & Olufsen America, Inc. ("BOA") is incorporated under the laws of the State of Delaware, having had its principal place of business located in New York City, New York.  The remaining  Third-Party  Plaintiffs/Counterclaim-Plaintiffs/Defendants  ("BOA/S", "BOP", "BOO") are Danish companies with their principal places of business located in Denmark.

2.      According to Counterclaim-Defendant's/Plaintiff's allegations in the action, Counterclaim-Defendant and Plaintiff M&N Luxury AV, LLC ("M&N") is a limited liability company organized in the State of California, and founded on January 17, 2017, with its principal place of its business located in the City and County of Los Angeles, State of California.

3.      Third-Party Defendant Mr. David Junk ("Mr. Junk") is a citizen of the State of California, with a primary residence located at 5741 Norwich Avenue, Van Nuys, California 91411. Mr. Junk is the Chief Executive Officer and sole member of M&N Luxury AV, LLC.

## JURISDICTION AND VENUE

4.      Federal diversity jurisdiction exists pursuant to 28 U.S.C.  § 1332 because Third-Party Plaintiffs/Counterclaim-Plaintiffs are residents of a different state and country from the Counterclaim-Defendant M&N and Third-Party Defendant Mr. Junk, and because the amount in controversy exceeds $75,000. In addition, by filing its Complaint with this Court, M&N has submitted to the personal jurisdiction of this Court.  As a citizen and resident of the state of California, Mr. Junk is also subject to the personal jurisdiction of this Court.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

1    5.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because the

2    Counterclaim-Defendant and Third-Party Defendant reside in this district.

3    ## FACTS

4    ### A.    Bang & Olufsen's Trademark Usage

5    6.    The U.S. Patent and Trademark Office ("USPTO") has issued several

6    registrations for use of the Bang & Olufsen mark on, *inter alia*, "[e]lectric and

7    electronic apparatus and appliances, namely, audio and video recording, reproduction

8    and transmission equipment, namely, radios, radio receivers, players and

9    recorders…" including, but not limited to, Reg. No. 1,006,022 and 3,063,786

10   (hereinafter, the "Bang & Olufsen Marks").

11   7.    The Bang & Olufsen Marks have been in continuous use since at least

12   1975. Said registrations are in full force and effect, and the Bang & Olufsen Marks

13   are incontestable pursuant to 15 U.S.C. § 1065.

14   8.    Bang & Olufsen advertises, distributes, and sells its products to

15   consumers under the Bang & Olufsen Marks.

16   9.    Bang & Olufsen has also acquired common law rights in the use of the

17   Bang & Olufsen Marks throughout the United States.

18   10.    Bang & Olufsen's federal trademark registrations were duly and legally

19   issued, are valid and subsisting, and constitute *prima facie* evidence of Bang &

20   Olufsen's exclusive ownership of the Bang & Olufsen Marks.

21   11.    Bang & Olufsen has invested significant time, money, and effort in

22   advertising, promoting, and developing the Bang & Olufsen Marks throughout the

23   United States and the world.  As a result of such actions, Bang & Olufsen has

24   established substantial goodwill and widespread recognition in its Bang & Olufsen

25   Marks, and the Bang & Olufsen Marks have become associated exclusively with

26   Bang & Olufsen and its products by both customers and potential customers, as well

27   as the general public at large.

28   320822667.18

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

12.     To create and maintain such goodwill among its customers, Bang & Olufsen has taken substantial steps to ensure that products bearing the Bang & Olufsen Marks are of the highest quality. As a result, the Bang & Olufsen Marks have become widely known and are recognized throughout the United States and the world as a symbol of high-quality products.

13.     To maintain Bang & Olufsen's high standards, Bang & Olufsen partners with likeminded dealers who are able to collaborate and affirm the Bang & Olufsen reputation as a world leader in sound and design.

**B. M&N's Contractual Relationship with Bang & Olufsen**

14.     In the fall of 2016, Mr. Junk contacted Bang & Olufsen to enquire about becoming a Bang & Olufsen dealer.

15.     In November 2016, Mr. Junk began having initial talks with Bang & Olufsen and a third-party dealer regarding the take-over of the third-party dealer's store in Pasadena, California (the "Pasadena Dealer").

16.     Due to the issues surrounding the Pasadena take-over, Bang & Olufsen and M&N executed a License Deal Agreement ("LDA") for Southern California, with an effective date of July 31, 2017.

17.     The LDA states that "BOA grants the Dealer a non-exclusive right to distribute the Bang & Olufsen Products and use the Trademarks at the addresses and in connection with the operation of the [ ] Stores and/or Shop-in-shops listed in Schedule 3.1 (the Stores)."

18.     On November 14, 2017, Bang & Olufsen and M&N entered into a Master Retailer Agreement ("MRA").

19.     Within the MRA was a "Right-of-First-Offer" ("ROFO") clause which Mr. Junk negotiated and granted M&N a right-of-first-offer. According to the ROFO, if Bang &Olufsen believed it was advisable to have a Store opened within the Territory, Bang & Olufsen would "first offer [M&N] the right to open the New Store"

320822667.18

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

and M&N would then elect whether it would like to open the New Store.

20.    The Framework Agreement was executed by Mr. Junk on behalf of M&N Luxury AV, LLC on February 27, 2020.  Bang & Olufsen executed the Framework Agreement on May 3, 2020. The Framework Agreement appointed M&N as a non-exclusive dealer of Bang & Olufsen and granted M&N the right to buy and sell Bang & Olufsen products and use its intellectual property.

21.    The Framework Agreement contained 27 schedules which were negotiated by both parties at length. For example, M&N negotiated a Right-of-First-Offer found in Schedule 9, which no other dealer in the United States has in its agreement.

22.    The terms of Schedule 9 of the Framework Agreement granted M&N a "Right of First Offer" and "a non-exclusive basis" to distribute Bang & Olufsen products.

23.    Other terms negotiated by Mr. Junk and M&N, which no other Bang & Olufsen dealer in the United States has in its agreements with Bang & Olufsen, are Schedule 24[1], Termination Notice and Schedule 27, Special Terms.

24.    The Framework Agreement also provides for the following key terms:

- 2021 – 2023 Schedule 24 states: M&N agrees to "[p]ay its invoices to B&O on time."  This obligation is also referenced in Paragraph 13.4 (iii) of the Framework Agreement which lists material breaches, specifically providing that M&N "comply with its payment obligations."

- Schedule 5, ¶ 6.1.12 states: "Payment must be received at Bang & Olufsen America account by no later than the due date of the invoice."

---

[1] Schedule 24 was effective as of October 6, 2021 and later replaced on October 18, 2023 after notice of M&N's outstanding balance (the "2023 Schedule 24").

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

- Paragraph 13.2 states: "B&O may terminate this Agreement in full or in part without liability, with a prior written termination notice to [M&N] with a notice period as set out in Schedule 24. For the avoidance of doubt, B&O may terminate this Agreement with effect for any part of this Agreement, including but not limited to one or more physical stores or one or more Products, without effect of the remaining part of this Agreement."

- 2024 Schedule 24, ¶ 1.1. states: "The Termination notice for either Party to terminate this Agreement for convenience is 6 months."

- Paragraph 13.6 states: "Neither B&O nor [M&N] shall be liable to the other by reason of the expiration or termination of this Agreement, including, without limitation, liability based in law or in equity, compensation, reimbursement, or damages for present or prospective profits, or on account of investments, expenditures or commitments made by Partner, or as a result of the establishment, development or maintenance of the Goodwill of B&O, [M&N] or the Products."

- Paragraph 12.1 states: "B&O shall not be liable to [M&N] for any indirect, incidental, special, consequential, punitive, or exemplary damages arising out of or related to this Agreement under any legal theory, including but not limited to, operation losses, profit losses, consequential losses and other indirect losses, and in no event shall B&O's liability for damage on property exceed the amount of USD fifteen thousand…"

- Paragraph 14.2(i) states: "In case of termination of this Agreement, [M&N] acknowledges and agrees that the value of a luxury business

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

such as B&O predominantly lies within Products and B&O brands and therefore Partner acknowledges and agrees that:

> 'Goodwill and any increase in value of Goodwill vests absolutely in B&O and that Partner is not entitled to any payment or other compensation whatsoever from B&O and its related entities for any increase in value of Goodwill that occurred during the term of this Agreement unless otherwise provided for by mandatory provisions of the law applicable.'"

25.    Additionally, the Framework Agreement contained terms regarding confidentiality, whereby M&N agreed "to keep strictly confidential all confidential information about B&O and its related entities, its supplies, customers, Products, releases of new Products and the structure and development of the Network." During the term of the Agreement and after the expiration or termination "neither Party may disclose to any third party any Confidential Information. [Bang & Olufsen and M&N] acknowledge[d] and agree[d] that any Confidential Information received or obtained from the other party will be the sole and exclusive property of the other party and may not be used, disseminated, or disclosed…"

## C. M&N's Breaches of the Framework Agreement

26.    Over the last seven (7) years, M&N has breached the Framework Agreement through its failure to pay its invoices.  M&N has a long history of nonpayment and delayed payment.  During the course of the Parties' relationship, Bang & Olufsen issued M&N approximately 4,285 invoices, and only 1,180 were paid on-time.

20

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

27.     Schedule 24 of the Framework Agreement states: M&N agrees to "[p]ay its invoices to B&O on time."  This obligation is also referenced in Paragraph 13.4 (iii) of the Framework Agreement which lists material breaches, specifically providing that M&N "comply with its payment obligations."

28.     Schedule 5, ¶ 6.1.12 of the Framework Agreement states: "Payment must be received at Bang & Olufsen America account by no later than the due date of the invoice."

29.     Paragraph 13.2 of the Framework Agreement states: "B&O may terminate this Agreement in full or in part without liability, with a prior written termination notice to [M&N] with a notice period as set out in Schedule 24. For the avoidance of doubt, B&O may terminate this Agreement with effect for any part of this Agreement, including but not limited to one or more physical stores or one or more Products, without effect of the remaining part of this Agreement."

30.     M&N was operating anything but a successful business.  By May of 2023, M&N had fallen significantly behind on its payments to Bang & Olufsen.  Even with Bang & Olufsen's help in extending a loan to M&N to cover overdue invoices, M&N continued to fall behind on payments.  As of September 1, 2023, M&N had an overdue balance of $294,578.39.

31.     Bang & Olufsen notified M&N of its breaches for nonpayment on at least the following dates:

    i.     January 24, 2023;

    ii.     February 8, 2023,

    iii.     February 14, 2023;

    iv.     June 6, 2023;

    v.     July 5, 2023;

    vi.     July 21, 2023;

    vii.     August 3, 2023;

320822667.18

21

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

viii.    September 1, 2023;

ix.    October 18, 2023;

x.    February 14, 2024;

xi.    February 19, 2024; and

xii.    May 8, 2024.

32.    After multiple notices of its breach for nonpayment, Bang & Olufsen terminated M&N as a Bang & Olufsen dealer on February 14, 2024.

33.    M&N's breach and delinquency did not end once it filed its Complaint against Bang & Olufsen.  Over two (2) months after initiating the litigation, M&N again breached the Agreement by failing to pay its invoices on time.

34.    After this post-Complaint breach, on May 8, 2024, Bang & Olufsen sent M&N (via counsel) a notice, informing them that they were:

> [D]elinquent in its payment of **88,738.25 USD**, with an additional **2,371.37** due to be paid to B&O on the date of [the] letter . . . M&N's repeated failure to comply with the requirement of the Framework Agreement, including, but not limited to, M&N's recurring nonpayment, constitutes cause for immediate termination. However, in accordance with the February 14, 2024 Notice of Termination, termination under this notice shall occur on **August 15, 2024**.

35.    This May 8, 2024 notice explained that "M&N's repeated failure to comply with the requirements of the Framework Agreement, including, but not limited to, M&N's recurring nonpayment, constitutes cause for immediate termination.  However, in accordance with the February 14, 2024 Notice of Termination, termination under this notice shall occur on August 15, 2024."

36.    M&N's notices, including, but not limited to, the notice sent on May 8,

22

2024 effectively terminated the Parties' Framework Agreement.

37.    Schedule 25, Consequences of Termination of the Framework Agreement holds that "B&O has the right, but not the obligation within thirty (30) days after termination, to purchase from Partner any or all inventory related to the operation of one or more physical stores from [M&N]…"

38.    M&N's breach and subsequent termination triggered Schedule 25, ¶ 1.1, providing Bang & Olufsen the right to purchase M&N's remaining inventory from all five (5) M&N locations as of the date of termination.

39.    Pursuant to Schedule 25, ¶ 1.1, Bang & Olufsen sent four separate demands to M&N requesting to exercise the right to buy back its inventory: one on July 10, 2024, one on August 26, 2024, one on September 17, 2024, and one on October 2, 2024.

40.    M&N did not respond to any of Bang & Olufsen's requests to buy back inventory. Preventing Bang & Olufsen from exercising its contractual right to repurchase its own inventory constitutes a breach of the Framework Agreement.

41.    Upon information and belief, M&N sold the Bang & Olufsen inventory in order to fund this litigation and rebrand its stores as a competitor.

42.    Upon termination of the Framework Agreement, M&N was contractually required to cease the use of Bang & Olufsen's intellectual property.

43.    In paragraph 14.1 of the Agreement, M&N agreed that: "Immediately upon the termination of [the] Agreement . . . [M&N] will discontinue any use of the Intellectual Property Rights; and [M&N] will refrain from doing business under any name or any manner that might give the impression that [M&N] is or was an authorized distributor and/or reseller of B&O or any of its related entities."

44.    Despite Bang & Olufsen's termination on August 15, 2024, a further written cease and desist letter sent on September 17, 2024, the Court's denial of M&N's motion for preliminary injunction, and the Court's finding that M&N was

320822667.18

23

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

unlikely to succeed on the merits of its claims, M&N continued to hold itself out as an authorized reseller of Bang & Olufsen and use Bang & Olufsen's intellectual property.

45.    On or about October 31, 2024, two months after termination, M&N began contacting customers informing them that M&N would be closing the "Bang & Olufsen showrooms in California" and that "While we're closing our doors as Bang & Olufsen, we're excited to continue serving you under the new name Sound & Shades, where you'll find even more innovative audio, visual, lighting and shading solutions for your home or business."

46.    M&N's actions substantially harmed Bang & Olufsen by continuing to hold itself out as a Bang & Olufsen authorized dealer and placing Bang & Olufsen Products into the stream of commerce in the United States which were no longer supported by Bang & Olufsen.

47.    M&N's continuous use of the Bang & Olufsen name on its storefronts, after termination, has caused and is likely to cause consumer confusion by representing to consumers that the stores they operated are authorized Bang & Olufsen stores, when they are not.

48.    M&N's unauthorized use of Bang & Olufsen's intellectual property is a violation of both the Parties' Framework Agreement paragraph 14.1 and 15 U.S.C. §§ 1114.

**D. M&N's and David Junk's False Representations and Illegal Conduct**

49.    As discussed, on or about May 2023, the relationship between Bang & Olufsen and M&N continued to deteriorate due to M&N's failure to pay its invoices. Bang & Olufsen decided to terminate the relationship for M&N's continuous nonpayment. Displeased with Bang & Olufsen's decision to terminate, M&N initiated litigation against Bang & Olufsen.

50.    A few months after the M&N filed its Complaint, both Parties and their

320822667.18

24

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

respective counsel attended mediation, pursuant to a Confidential Mediation Agreement (attached hereto as Exhibit A), at the office of K&L Gates, LLP in Boston, Massachusetts. Mr. David Junk was in attendance on behalf of M&N Luxury AV, LLC. Line Køhler Ljungdahl, Chief Corporate Commercial Officer for Bang & Olufsen, and Jonas Glyager, counsel for Bang & Olufsen, both citizens and full-time residents of Denmark, attended the mediation on behalf of Bang & Olufsen.

51.     In advance of the mediation, on June 24, 2024, the Parties entered into the Confidential Mediation Agreement which, in relevant part, they agreed that:

> "the mediation and its contents and results ***will be confidential***. Mediation discussions, written and oral communications . . . shall not be admissible in any court, judicial or arbitral proceedings. The parties, counsel and the mediator regard and agree that the mediation and its associated process are inadmissible settlement negotiations under all applicable court and evidentiary rules." (emphasis added)

52.     Ultimately, the Parties were unsuccessful in reaching an agreement at the June 24, 2024 mediation.

53.     Dissatisfied with the litigation process, M&N and Mr. Junk took matters into their own hands and initiated an attack against Bang & Olufsen by contacting Bang & Olufsen's Board of Directors and Shareholders.

54.     On October 23, 2024, Mr. Junk sent a letter to the Bang & Olufsen's Board of Directors and Shareholders (the "Letter") making false representations as to his businesses and referring to Bang & Olufsen's conduct as illegal and "insanity." Attached hereto as Exhibit B. The Letter alleges that Bang & Olufsen's CEO, Kristian Teär ("Mr. Teär") has a "vendetta" against Mr. Junk, that Mr. Teär misinformed shareholders, and that "shareholder resources are being used to pursue

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

this vendetta" against Mr. Junk.  Mr. Junk further stated that "Shareholders were misinformed by [Mr. Teär]'s recent statements about the true state of [ ] business in California."  Furthermore, Mr. Junk declared that "I will drop the lawsuit" if Bang & Olufsen reinstate M&N as an authorized dealer. Mr. Junk offered these allegations without evidence or explanation.  These false allegations are harmful to Bang & Olufsen's business and reputation

55.    By November 2024, M&N began contacting customers and informing them that they would be closing their stores as a Bang & Olufsen dealer and reopening as Sound & Shades, which Mr. Junk later contended is a competitor of Bang & Olufsen.

56.    Mr. Junk went further in his charge against Bang & Olufsen by attacking Bang & Olufsen in the Danish press.

57.    On or about November 2024, Mr. Junk gave an interview to the Danish press, which led to the publication of the front-page article on November 14, 2024 in the Danish Newspaper, Børsen.[2]  Attached hereto as Exhibit C. Mr. Junk describes the Børsen as a "leading Danish Business Paper [that] is running a series of articles to cover the story. . . in a front-page article and several pages in print and online."

58.    Mr. Junk's interview was picked up by other news sources, which were published online and in print, including, but not limited to, Struer Dagblad, Detailwatch, and Finanswatch.[3]

59.    In the article, Mr. Junk alleges that Bang & Olufsen is engaging in "illegal business practices," and that Bang & Olufsen's CEO, Mr. Teär is misleading shareholders. Statements such as these have lasting impact on a company.

---

[2]  Found here:  https://borsen.dk/nyheder/virksomheder/stor-forhandler-raser-og-sagsoger-bo-toppen?b_source=borsen&b_medium=row_5&b_campaign=news_1
[3] Found here: https://dagbladet-holstebro-struer.dk/struer/b-o-har-opsagt-samarbejde-nu-staevner-stor-amerikansk-forhandler-virksomheden (Struer Dagblad); https://detailwatch.dk/nyheder/elektronik/article17639334.ece (Detail Watch);

Specifically, allegations of misleading the market effect the goodwill of the Bang & Olufsen name and impact a company's share price. Bang & Olufsen is a publicly listed company and regulated by the Danish Financial Supervisory Authority. M&N and Mr. Junk knew of the impact that these statements would have and have had on Bang & Olufsen by specifically directing these statements in the Danish press.

60.     Mr. Junk also takes aim at Ms. Ljungdahl for statements that Ms. Ljungdahl allegedly told his lawyers *during the mediation.*  Specifically, Mr. Junk has continued its narrative of a vendetta and misappropriation of shareholder funds by disclosing conversations which could have only taken place during the Parties' confidential mediation as Ms. Ljungdahl could have only communicated with counsel at that time.

61.     Mr. Junk's statement as to what Ms. Ljungdahl allegedly told his lawyers *during the mediation* has perpetuated the broken trust of confidentiality between the Parties that is expected (and expressly provided for in the Confidential Mediation Agreement) during *and after* a mediation.

62.     Mr. Junk's intentional disclosure of confidential information in breach of the Mediation Agreement has and continues to injure Bang & Olufsen's reputation in the ordinary sense of the word because the statements diminish Bang & Olufsen's esteem, respect, goodwill and confidence in the community as it causes others to have bad feelings or opinions about Bang & Olufsen.

63.     Moreover, upon information and belief, M&N and Mr. Junk have breached the confidentiality terms of the Framework Agreement by disclosing, *inter alia*, confidential financial information to third parties, including the press.

64.     As if defaming Bang & Olufsen was not enough, Mr. Junk has also been communicating with Bang & Olufsen board members directly via LinkedIn, alleging the same falsities.  Attached hereto as Exhibit D.

320822667.18

27

BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT

65.    Further, Mr. Junk has continued his communication with the press, leading to the publications of a January 8, 2025 article and February 23, 2025 article in the Børsen.  Attached hereto as Exhibits E and F, respectively.

66.    In the February 23, 2025 article, Mr. Junk stated that he "reopened four of the closed stores with the Danish speaker brand Canvas, which sees itself as a B&O competitor."

67.    The statements published in the Letter and Articles deter third parties, including consumers and shareholders of Bang & Olufsen, from purchasing Bang & Olufsen products or wanting to support Bang & Olufsen.

68.    In breach of the Framework Agreement, Mr. Junk and M&N continue to use the Bang & Olufsen name and their past affiliation with Bang & Olufsen for their own monetary gain and to deter customers from buying Bang & Olufsen Products.  For example, Mr. Junk and M&N sent an email to customers titled "Exclusive Savings for our Bang & Olufsen Clients!"  Notwithstanding now being a competitor of Bang & Olufsen, Mr. Junk and M&N have used, and are using the Bang & Olufsen name in its marketing and promotion of its new business venture, seven months after termination.

69.    M&N continues to misuse the goodwill it obtained from Bang & Olufsen to now market, promote, and compete against Bang & Olufsen.

70.    Mr. Junk intended the statements made to the press, Bang & Olufsen shareholders, and Bang & Olufsen board members to disgrace, lower, and exclude Bang & Olufsen from the high-end audio and home entertainment market by bringing Bang & Olufsen into contempt and/or ridicule.

71.    Mr. Junk's actions are willful, malicious, fraudulent, and/or in reckless disregard for Bang & Olufsen's rights, for which Bang & Olufsen is entitled to an award of punitive and exemplary damages.

320822667.18

28

## COUNTERCLAIM I

### Breach of Contract

### (as to M&N's's Breach of the Framework Agreement)

72.    Bang & Olufsen hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.    The Framework Agreement is an enforceable written contract between M&N and Bang & Olufsen.

74.    M&N materially breached the Framework Agreement by, *inter alia,* failing to pay its invoices, continuing to sell Bang & Olufsen products after termination, continuing to use the Bang & Olufsen Marks after termination, and failing to abide by the terms of the confidentiality provision.

75.    M&N has repudiated its post-termination obligations under the Framework Agreement by continuing to use the Bang & Olufsen Marks and refusing Bang & Olufsen's repurchase of the inventory.

76.    As an actual and proximate result of the foregoing breaches of contract, Bang & Olufsen has suffered, and will continue to suffer damages, including direct, consequential, and incidental losses and lose profits, in an amount to be proved at trial.

## COUNTERCLAIM II

### Breach of Contract

### (as to M&N and the Mediation Agreement)

77.    Bang & Olufsen realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.    Bang & Olufsen and M&N entered into a binding and enforceable contractual relationship (the Confidential Mediation Agreement) on or around June 24, 2024.

320822667.18

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

79.     The Confidential Mediation Agreement required that M&N keep the "contents and results" of the Parties' June 24, 2024 mediation "confidential." This confidentiality obligation applies to all "[m]ediation discussions, written and oral communications."

80.     Bang & Olufsen performed all of its obligations under the Confidential Mediation Agreement.

81.     M&N materially breached the Confidential Mediation Agreement by disclosing, to a third party (i.e. the Danish press) a statement allegedly made by Ms. Line Køhler Ljungdahl during the mediation.

82.     As a direct and proximate result of M&N's breach, Bang & Olufsen has not received the benefit of its bargain and suffered losses, damages, and expenses in an amount to be determined at trial.

## COUNTERCLAIM III

### Violation of Business and Professions Code §§ 17200 *et seq.*

### (as to M&N)

83.     Bang & Olufsen hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     The California Unfair Competition Law, codified at Business and Professions Code sections 17200 *et seq.,* prohibits any unlawful, unfair, or fraudulent business act or practice.

85.     M&N's acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200 *et seq.*

86.     M&N's misconduct has a tendency and likelihood to deceive members of the public.

87.     The foregoing acts and practices have caused substantial harm to Bang & Olufsen.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

88.   As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of M&N, Bang & Olufsen has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

89.   M&N's conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving Bang & Olufsen of property and/or legal rights or otherwise causing injury. M&N's conduct subjected Bang & Olufsen to unjust hardship in conscious disregard of the Bang & Olufsen's rights, such as to constitute malice, oppression, or fraud under California Civil Code § 3294, thereby entitling Bang & Olufsen to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of M&N.

## **COUNT I**

### **Defamation**

### **(as to David Junk)**

90.   Bang & Olufsen realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.   Mr. Junk, on at least four separate occasions, published (or caused to be published) false statements about Bang & Olufsen: once in the Letter to the Bang & Olufsen Board of Directors and Shareholders and three times in the Articles published to the Danish media, which has since been picked up by several other Danish news outlets.

92.   Mr. Junk intentionally published these falsehoods in his capacity as Chief Executive Officer of M&N Luxury AV, LLC. Mr. Junk further failed to use reasonable care to determine the truth or falsity of the statements.

93.   Mr. Junk acted and continues to act with malice in making the false statements about Bang & Olufsen to the Danish press and its corporate leadership.

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

94.    Bang & Olufsen's customers reasonably understood Mr. Junk's statements to be referring Bang & Olufsen.

95.    These false statements have caused material and/or reputational harm to Bang & Olufsen.  Not only did Mr. Junk make false statements to company leadership, causing internal distrust, but published these false statements, in Denmark (Bang & Olufsen's core domestic consumer base), tarnishing its reputation as a global leader in high end consumer electronics.

96.    Mr. Junk published the Article and sent the Letter knowing these statements were false.

97.    Further, Mr. Junk elected to publish his false statements in the Danish media, rather than via a media outlet in the United States, because he is aware that Bang & Olufsen is a *Danish* company.

98.    At no time while making any false statements has any privilege (qualified or unqualified) been available to Mr. Junk, and therefore Mr. Junk's publication to these third parties is unprivileged.

99.    Mr. Junk's publications directly and proximately caused Bang & Olufsen to incur actual and substantial damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Bang & Olufsen prays for judgment against Counterclaim-Defendant and Third-Party Defendant as follows:

1.    That judgment be entered in each the Third-Party Plaintiffs'/Counterclaim-Plaintiffs' favor, and against M&N and Mr. Junk on each of the Counts.

2.    For compensatory damages, including actual, incidental, consequential, statutory, and all other permissible forms of damage in the amounts to be proven at trial.

3.    For punitive and exemplary damages as available for the asserted

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

Counts.

    4.    For an award of attorneys' fees, costs, expenses, and disbursements in prosecuting this action to the extent permitted by applicable law, contract or equity.

    5.    For pre- and post-judgment interest as permitted by law or contract.

    6.    For all such other and further relief as this Court deems just and proper.

## JURY TRIAL CLAIM

Bang & Olufsen hereby requests trial by jury on all claims so triable.

Dated: April 1, 2025          K&L GATES LLP

By: */s/ Christopher S. Finnerty*
      J. David Bournazian
      Christopher S. Finnerty, (Pro Hac Vice)

      Attorneys for Third-Party
      Plaintiff/Counterclaim-
      Plaintiffs/Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

Dated: April 1, 2025          */s/ Christoher S. Finnerty*
      Christopher S. Finnerty

320822667.18

33

**BANG & OLUFSEN'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**