Michael G. Freedman (State Bar No. 281279)
**THE FREEDMAN FIRM PC**
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: Michael@thefreedmanfirm.com

*Attorney for Plaintiff and Counterclaim-Defendant*
*M&N LUXURY AV, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M&N LUXURY AV, LLC, a California limited liability company,<br>Plaintiff,<br><br>v.<br><br>BANG & OLUFSEN AMERICA INC., et al.,<br>Defendants. | Case No. 2:24-cv-02230-DSF-KES<br><br>Hon. Dale S. Fischer<br><br>**[PROPOSED] FINAL PRE-TRIAL ORDER** |
| AND RELATED COUNTERCLAIMS. | |

Following pre-trial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1. The parties are:

   - M&N Luxury AV, LLC (Plaintiff; Defendant-in-Counterclaim) (“M&N”)
   - Bang & Olufsen America Inc., Bang & Olufsen A/S, B&O Play A/S, and Bang & Olufsen Operations A/S (Defendants; Plaintiffs-in-Counterclaim) (collectively, “B&O”)

   The Pleadings which raise issues are:

   - M&N’s Second Amended Complaint (Dkt. 97)
   - B&O’s Answer to M&N’s Second Amended Complaint and Amended Counterclaims (Dkt. 118); and
   - M&N’s Answer to B&O’s Amended Counterclaims (Dkt. 143)

2. Federal jurisdiction and venue are invoked upon the grounds:

   - 28 U.S.C. §1332(a)
   - Venue is proper in Los Angeles County because the parties’ written agreement was made and entered into within the County of Los and was performed within this county, and the parties’ alleged conduct occurred within this county.

3. The trial is estimated to take 10-12 trial days.

4. The trial is to be a jury trial.

5. The following facts are admitted and require no proof:

   No facts are identified as admitted in this working draft. The parties will continue to meet and confer before the final pretrial conference. A proposed fact will require no proof only if the parties expressly agree to include it in the final order.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

The parties will continue to meet and confer concerning facts that may be stipulated for trial efficiency. Any agreed stipulation will preserve evidentiary objections unless the parties expressly agree otherwise.

7. Claims and Defenses:

**Plaintiff:**

a) M&N identifies the following claims and pleaded affirmative defenses in its filed Memorandum of Contentions of Fact and Law (Dkt. 169) and Answer to B&O's Amended Counterclaims (Dkt. 143):

Claims

i. *Count I — Breach of Written Contract*

M&N alleges that the parties entered into the Framework Agreement in 2020 and that B&O breached it by purporting to terminate the relationship without a contractual right to do so. The central contract issue is which version of Schedule 24 governed termination. M&N contends that the only Schedule 24 it signed was the execution package version and that later versions on which B&O relies were never validly agreed to as amendments. M&N further contends that, even if the Agreement imposed the strict invoice payment timing B&O now invokes, B&O waived strict compliance through years of accepting M&N's payment practices and did not effectively reinstate a strict compliance requirement before relying on it as a basis for termination. M&N seeks damages caused by the termination.

ii. *Count II — Breach of the Implied Covenant of Good Faith and Fair Dealing*

M&N pleaded that B&O exercised contractual rights in bad faith and interfered with M&N's contractual benefits. The wrongful termination aspect of that claim overlaps substantially with Count I. M&N also asserts an independent repurchase based theory if termination is determined to have been lawful: B&O had sufficient information to

identify and value the covered property but did not make a bona fide repurchase offer or tender the statutory repurchase price.

*iii. Count III — California Franchise Investment Law*

M&N alleges that the parties' relationship was a franchise under California law and that B&O violated the California Franchise Investment Law ("CFIL") by offering or selling the franchise in California without the required registration and without timely providing a Franchise Disclosure Document. M&N seeks the damages and other relief authorized by the CFIL.

*iv. Count IV — Declaratory Relief and Injunction Concerning Termination*

M&N seeks a declaration concerning the validity of B&O's February 14 and May 8, 2024 termination notices and related injunctive relief. This claim substantially overlaps Count I and M&N's contention under the California Franchise Relations Act ("CFRA") that B&O lacked statutory good cause for termination or did not satisfy the requirements for the statutory exception on which it relies.

*v. Count V — Unconscionability Under Cal. Civ. Code § 1670.5*

M&N seeks a determination that specified provisions of the Framework Agreement are unconscionable and unenforceable, including Section 1.5; Sections 3.4 and 3.5; Section 12.1 ("Limitations of Liability"); Sections 13.2 and 13.5; Schedule 24; Sections 15.1 and 15.2; Section 16.2; Sections 20.1 and 20.2; and other provisions according to proof. The ultimate enforceability determination is for the Court under Civil Code section 1670.5.

*vi. Count VI — Trade Libel*

M&N alleges that B&O published a false and disparaging statement that it had discontinued its California dealer relationship with M&N "due to performance issues," and that the publication caused specific pecuniary harm to M&N's business. M&N contends that the statement conveyed substantive performance failures beyond the payment timing dispute and was materially false in that understood sense.

*vii. Count VII — Accounting and Declaratory Relief (Against BOA)*

M&N alleges that Bang & Olufsen America Inc. ("BOA") failed to make timely or complete revenue sharing payments owed under Schedule 5f of the Framework Agreement, including e-commerce, HERO, and custom integration revenue, and seeks an accounting and related declaratory relief to determine the amount due.

*viii. Count VIII — Permanent Injunctive Relief*

M&N seeks permanent injunctive relief predicated on its substantive claims, including restoration of product supply and the parties' pre-termination status quo and relief restraining conduct that would prevent M&N from operating as it did when the dispute began, to the extent that such relief remains practicable and warranted at judgment. M&N understands the permanent injunction request to be an equitable remedy for the Court rather than a separate jury cause of action.

<u>Affirmative Defenses to B&O's Counterclaims</u>

*i. First Affirmative Defense: Failure to State a Claim*

M&N pleads that B&O's Amended Counterclaims fail, in whole or in part, to state a claim on which relief can be granted. Dkt. 143 at 20.

*ii. Second Affirmative Defense: No Injury or Damages*

M&N disputes that B&O suffered injury or incurred damages as a consequence of the conduct alleged in its Amended Counterclaims. Dkt. 143 at 20.

*iii. Third Affirmative Defense: Lack of Causation*

M&N disputes that its conduct directly, proximately, or legally caused any alleged injury to B&O. Dkt. 143 at 20.

*iv. Fourth Affirmative Defense: B&O's Breach of Contract*

M&N contends that some or all of B&O's counterclaims are barred or limited by B&O's own prior material breach or nonperformance, including where B&O seeks contract relief that depends on a termination that violated California franchise law or otherwise was not effective under the Framework Agreement.

*v. Fifth Affirmative Defense: Impossibility of Performance*

M&N preserves its pleaded defense that some or all of B&O's counterclaims are barred to the extent that the evidence establishes that performance of an asserted obligation was impossible.

*vi. Sixth Affirmative Defense: Failure to Mitigate*

M&N contends that B&O may not recover losses it could have avoided through reasonable efforts or expenditures, including losses attributable to B&O's failure to complete a repurchase of remaining inventory despite the inventory information available to it. See CACI No. 358.

*vii. Seventh Affirmative Defense: California Unfair Competition Law*

M&N preserves the defenses pleaded under the California Unfair Competition Law to B&O's Counterclaim IV.

*viii. Eighth Affirmative Defense: Waiver, Release, Offset, Estoppel, Unclean Hands, and Ratification*

M&N preserves these pleaded defenses to the extent supported by the evidence and applicable to B&O's counterclaims.

*ix. Ninth Affirmative Defense: Accord and Satisfaction*

M&N preserves its pleaded defense that some or all of B&O's counterclaims are barred by accord and satisfaction to the extent supported by the evidence.

*x. Tenth Affirmative Defense: Statute of Limitations and Laches*

M&N preserves its pleaded defenses based on applicable limitations periods and laches to the extent supported by the evidence.

*xi. Eleventh Affirmative Defense: Protected Speech / First Amendment*

M&N preserves its pleaded protected commercial speech and First Amendment defenses to the extent B&O's live theories seek liability or relief based on M&N's public communications concerning this litigation or the parties' commercial dispute.

*xii. Twelfth Affirmative Defense: California Franchise Law*

M&N contends that B&O may not obtain contract or declaratory relief that depends on a termination that violated the California Franchise Relations Act or other applicable California franchise law.

*xiii. Thirteenth Affirmative Defense: Other Available Defenses*

M&N's Answer also pleads a general reservation of other affirmative and available defenses under applicable federal or state law. Dkt. 143 at 22. M&N identifies no additional specific defense by that reservation.

b) The elements and required showings for M&N's claims are:

<u>Claims</u>

*i. Count I — Breach of Written Contract*

To recover on its breach of contract claim, M&N must prove: (1) the existence of the Framework Agreement; (2) M&N's performance or excuse for nonperformance; (3) B&O's breach; (4) harm; and (5) that B&O's breach was a substantial factor in causing that harm. CACI No. 303.

Because B&O contends that later versions of Schedule 24 modified the executed Framework Agreement, B&O also bears the burden of proving the alleged modification. See CACI No. 313; Cal. Civ. Code § 1698. Section 22.5 of the Framework Agreement requires any amendment or variation of Schedule 24 to be set out in a writing signed by both parties. M&N contends that its lack of written assent creates a material factual dispute over whether the Agreement was amended to include the revised Schedule 24 on which B&O relies. M&N cites Dkt. 161 at 2–3. The Court's instructions will govern the effect of Section 22.5 and any waiver or estoppel theory supported by the record.

M&N also relies on waiver. M&N bears the burden of proving waiver by clear and convincing evidence. A party may waive a contractual right by words or conduct. CACI Nos. 201, 336; Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 31 (1995). After strict compliance has been waived, the waiving party may not abruptly rely on strict

performance without definite notice that strict compliance will again be required and a reasonable opportunity to comply. Gonzalez v. Hirose, 33 Cal. 2d 213, 216–17 (1948).

*ii. Count II — Breach of the Implied Covenant of Good Faith and Fair Dealing*

In every contract there is an implied promise that neither party will do anything to unfairly interfere with the other party's right to receive the benefits of the agreement. On M&N's repurchase-based theory, M&N must prove: (1) the Framework Agreement; (2) M&N's performance or excuse; (3) if applicable, that any conditions required for B&O's performance occurred or were excused; (4) if B&O lawfully terminated the franchise and a repurchase duty applied, B&O unfairly interfered with M&N's right to receive the Agreement's benefits by acting in bad faith in connection with the post-termination repurchase of remaining inventory and fixtures; (5) B&O did not act fairly and in good faith; and (6) resulting harm. CACI No. 325; Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371–74 (1992). The implied covenant cannot create duties inconsistent with the express contract. The statutory repurchase findings alone do not establish this contract claim; the Court must determine how the statutory duty relates to the claimed contractual benefit.

Business and Professions Code section 20022 requires a franchisor, after lawful termination or nonrenewal, to purchase qualifying inventory, supplies, equipment, fixtures, and furnishings acquired from the franchisor or approved suppliers or sources at the franchisee's cost less depreciation, subject to statutory exceptions. Cal. Bus. & Prof. Code § 20022(a), (d), (g). Subsection (d) may eliminate the statutory duty if B&O did not prevent M&N from retaining control of the principal place of the franchise business; subsection (g) concerns only particular items M&N sold pursuant to termination between notice and cessation of operations. B&O contends that exceptions apply; M&N contends B&O bears the burden of proving the facts necessary to establish any exception on which it relies.

*iii. Count III — Violations of the California Franchise Investment Law*

M&N must first establish that the parties' relationship satisfied the statutory definition of a franchise: (1) an agreement; (2) a right to offer, sell, or distribute goods or services under a marketing plan or system prescribed in substantial part by B&O; (3) substantial association with B&O's trademark or other commercial symbol; and (4) a required franchise fee. Cal. Corp. Code §§ 31005, 31011. The label used by the parties does not determine whether the statutory elements are present.

On the unregistered franchise theory, M&N must prove that B&O offered or sold a franchise to M&N in California, that the offer or sale was not registered under the CFIL, that M&N was harmed, and that the registration violation was a substantial factor in causing that harm. Cal. Corp. Code §§ 31110, 31300(a).

On the disclosure theory, M&N must prove that B&O sold a franchise subject to registration; that B&O did not provide the required franchise disclosure document and proposed agreements at least 14 days before the earlier statutory triggering event; that M&N was harmed; and that the disclosure violation was a substantial factor in causing the harm. Cal. Corp. Code §§ 31119(a), 31300(a). Section 31512 prohibits waiver of compliance with the CFIL.

*iv. Count IV — Declaratory Relief and Injunction Concerning Termination*

Under 28 U.S.C. § 2201(a), M&N must establish an actual controversy concerning the parties' legal rights. The validity and effect of B&O's February 14 and May 8, 2024 termination notices remain disputed. If the relationship was a franchise, termination also had to comply with the CFRA. Business and Professions Code section 20020 generally requires good cause for termination before expiration. B&O invokes section 20021(g), which permits termination for repeated failure to comply with one or more franchise requirements, whether or not corrected after notice. M&N contends B&O bears the

burden of proving that the payment requirement on which it relies was a lawful, enforceable requirement and that M&N repeatedly failed to comply with it.

M&N also relies on section 20021(j), which separately addresses a failure to pay amounts due within five days after written notice that the amounts are overdue, and on Paragraph 13.4 of the Framework Agreement, which provides a 30-day cure period for material breach. M&N contends that the only notice identifying a specific payment delinquency was the May 8 notice and that the identified balance was paid the next day. Section 20010 makes a purported waiver of compliance with the CFRA contrary to public policy and void.

*v. Count V — Unconscionability Under Civil Code § 1670.5*

Civil Code section 1670.5 authorizes the Court to refuse to enforce a contract or clause, or to limit an unconscionable clause, if the clause was unconscionable when made. M&N contends the Court should consider the circumstances of contract formation and the substantive operation of the challenged provisions in determining whether and to what extent they are enforceable. M&N further contends that the Court should resolve the enforceability and scope of any challenged contractual damages restriction before the jury is instructed on recoverable damages.

*vi. Count VI — Trade Libel and Punitive Damages*

M&N must prove that B&O made a statement that would be clearly or necessarily understood to disparage M&N's business or services; that the statement was made to a person other than M&N; that it was untrue; that B&O knew it was untrue or acted with reckless disregard for truth or falsity; that B&O knew or should have recognized that someone else might act in reliance on the statement, causing M&N financial loss; that M&N suffered direct financial harm because someone else acted in reliance; and that B&O's conduct was a substantial factor in causing the harm. CACI No. 1731.

M&N seeks punitive damages on its CFIL and trade libel theories. M&N must prove by clear and convincing evidence that the conduct was accompanied by malice, oppression, or fraud and must satisfy the entity liability requirements of Civil Code

section 3294. See Cal. Civ. Code § 3294(a), (b); CACI No. 3945. The availability and amount of punitive damages will depend on the liability findings and the Court's rulings.

*vii. Count VII — Accounting and Declaratory Relief Against BOA*

M&N seeks an accounting based on the parties' revenue sharing relationship and contends that a balance due cannot be determined without a reconciliation of BOA's statements, payment records, and M&N's books and records. M&N also seeks related declaratory relief concerning the effect of BOA's alleged payment failures on M&N's obligations.

*viii. Count VIII — Permanent Injunctive Relief*

M&N seeks permanent injunctive relief as a remedy tied to its substantive claims. The CFRA expressly allows a court to grant preliminary or permanent injunctive relief to prevent or restrain violations of the Act. Cal. Bus. & Prof. Code § 20035(b). M&N contends the Court should determine the availability and scope of any permanent equitable relief after resolving liability and considering whether legal remedies are adequate and whether the requested relief remains practicable.

c) In brief, the key evidence M&N relies on for its claims and defenses is:

<u>Claims</u>

*i. Count I — Breach of Written Contract*

The executed February 2020 Framework Agreement and signed execution package Schedule 24 support M&N's position that the parties did not originally adopt the late payment termination condition B&O now invokes. In October 2021, B&O sent an unsigned revised Schedule 24 under the subject line "LDA Renewal" and asked David Junk to confirm that he had received and read it; Junk responded "Thank you Nilas!" but did not sign the document or expressly assent to the new payment condition. Dkt. 158-5. The October 2021 Schedule 24 later appeared among agreement materials produced by M&N. Dkt. 158-9. Separately, a May 5, 2023 email from Junk attached a file labeled "David Junk – Current Agreement.zip," although the filed exhibit does not include the

contents of that compressed file. Dkt. 158-12. M&N contends these later events do not establish the signed amendment required by Section 22.5. The parties' August 2022 execution of an amended Schedule 27 by signatures from both sides provides a contrasting example of how they documented an agreed schedule amendment. Dkt. 160 at 2–6.

The parties' course of performance concerning invoice payments also supports M&N's waiver position. B&O accepted non-due-date batch or weekly payments, maintained regular payment discussions, extended credit and repayment accommodations, and in 2023 converted a substantial outstanding balance into a repayment arrangement rather than treating it as an immediate basis for termination. Contemporaneous B&O communications stated that M&N had been "on top of payments" for a long period notwithstanding earlier issues. M&N contends that the jury could find from B&O's course of conduct that B&O acquiesced to delayed payment, citing Dkt. 161 at 2–3.

The termination notices and cure evidence are also central. The February 14, 2024 notice did not identify a particular delinquent invoice or amount. The May 8 notice identified an $88,738.25 delinquency, which M&N paid the next day; B&O's own internal communication then stated that it appeared M&N had paid off the overdue balance. M&N also will rely on contemporaneous communications concerning B&O's interest in taking over store locations and M&N's efforts to sell the business through a broker.

M&N's damages evidence includes its financial records and the opinions of its retained damages expert, Howard B. Grobstein. M&N presently expects to offer an economic damages opinion totaling approximately $13.167 million, including lost profits, lost business value, and the lost San Jose/Palo Alto expansion opportunity, subject to the Court's evidentiary and damages rulings.

*ii. Count II — Breach of the Implied Covenant*

Before termination, M&N provided B&O inventory spreadsheets identifying product quantities and cost information, including spreadsheets transmitted on November 22 and December 18, 2023. M&N contends B&O also possessed its own product and sales records and therefore had substantial information with which to identify and value inventory. David Junk states that M&N calculated the remaining B&O inventory after termination at a cost value of approximately $2.1 million. Dkt. 157-3 ¶ 30.

M&N later provided additional inventory information, including serial numbers through counsel. B&O contends that the serial number transmission occurred only in confidential settlement discussions and did not answer its standalone repurchase requests. M&N disputes that serial numbers were necessary to determine the statutory cost-based repurchase price and contends the information already available to B&O was sufficient to make a bona fide offer. The evidence therefore presents a factual dispute over what information was necessary, what information B&O possessed, and whether M&N supplied enough information to permit a repurchase.

B&O sent repurchase related requests after termination, but M&N contends B&O never made a firm repurchase offer or tendered the statutory repurchase price. M&N continued to sell some inventory after termination. M&N contends those sales may affect which particular items remained subject to repurchase or the measure of damages, but do not establish that B&O satisfied its repurchase obligations as to qualifying property that remained.

*iii. Count III — California Franchise Investment Law*

The Framework Agreement and its schedules prescribe store format, marketing, intellectual property use, point-of-sale data, product sourcing, design standards, and other operational requirements and require extensive use of the B&O brand. M&N also will offer evidence about marketing or other required payments beyond bona fide wholesale purchases and B&O's detailed control over Monobrand stores. M&N contends this evidence satisfies the statutory franchise elements regardless of the contractual label.

M&N will rely on evidence that the Framework Agreement was offered and entered in California in 2020, that B&O had not registered the franchise or filed the later exemption notice at that time, and that no franchise disclosure document was provided before execution. M&N also will rely on its investments in the relationship and testimony concerning the significance of disclosures bearing on exclusivity, termination, and franchise law protections.

*iv. Count IV — Declaratory Relief Concerning Termination*

The principal evidence is the Framework Agreement, the competing Schedule 24 versions, the termination notices, the parties' payment history and course of performance, the 2023 repayment arrangement, and the next-day payment of the delinquency identified in the May 8 notice. M&N also relies on the evidence of the alleged Schedule 24 amendment and B&O's later circulation theory described above. M&N contends that triable disputes exist over whether the revised Schedule 24 became part of the Agreement and whether B&O's course of conduct acquiesced to delayed payment, citing Dkt. 161 at 2–3.

*v. Count V — Unconscionability*

M&N will rely on evidence about how the Framework Agreement and schedules were drafted and presented, the parties' relative bargaining positions, the extent to which material terms were subject to meaningful negotiation, and the practical operation of the challenged provisions. The provisions include Section 12.1's limitation of liability language and Section 16.2's geographic sales boundary and liquidated damages provisions, as well as the other provisions identified in Count V. M&N also will rely on evidence bearing on the relationship between B&O's claimed contractual damages formulas and actual harm.

*vi. Count VI — Trade Libel*

On February 28, 2024, B&O communicated to Monobrand distribution partners that it had discontinued its California dealer relationship with M&N "due to performance issues." M&N will compare that statement with B&O's contemporaneous internal and

external evidence of M&N's sales, expansion, marketing, and store performance, including evidence that the La Jolla store received a 100% customer experience score in Spring 2024 and that B&O had supported M&N's California expansion. M&N contends that the jury could understand "performance issues" as implying substantive failings beyond simple late payment, citing Dkt. 161 at 3.

M&N also will rely on evidence that it was marketing the business for sale through SunBelt Brokers, including to potential overseas buyers; that B&O's statements made a sale of the business materially more difficult; and that competitors used information concerning B&O's statements in soliciting M&N customers. Junk states that he believes M&N lost sales worth more than $100,000 as a direct result of B&O's statements. Dkt. 157-3 ¶ 41. Junk adds that M&N's top four salespeople left after the statements and were recruited by new B&O dealers, with associated lost projects that M&N estimates at no less than $200,000. Dkt. 157-3 ¶ 42. B&O disputes the sufficiency and corroboration of this evidence.

*vii. Count VII — Accounting and Declaratory Relief*

M&N will rely on Schedule 5f, BOA's revenue sharing statements and payment records, M&N's books and records, and evidence that at least one revenue sharing payment was more than 200 days late. M&N contends a full reconciliation of e-commerce, HERO, and custom integration revenue is necessary to determine the amount, if any, that remains due.

*viii. Count VIII — Permanent Injunctive Relief*

M&N will rely on the evidence supporting its wrongful termination and franchise claims, together with evidence about the continuing effects of termination on store operations, product supply, business continuity, and M&N's ability to operate or transfer the business. M&N also will offer evidence bearing on the feasibility of restoring product supply or other aspects of the pre-termination status quo and on the adequacy of damages alone.

Affirmative Defenses to B&O's Counterclaims

M&N disputes that B&O validly modified Schedule 24, effectively reinstated strict invoice payment timing after its course of performance, or lawfully terminated the Framework Agreement. M&N also disputes the predicate, scope, enforceability, causation, and amount of B&O's post-termination sales damages and contends that Section 16.2 is an unenforceable penalty. M&N relies on its pleaded affirmative defenses identified above and on the evidence and legal contentions set out in Dkt. 169, Sections III.C and IV.

On Counterclaim I, M&N distinguishes invoice-payment timing from amounts ultimately paid and disputes harm or causation from timing alone. On Counterclaim II, M&N disputes lawful termination, any enforceable post-termination restriction, and B&O's claimed harm and damages measure; M&N contends online or eBay transactions cannot create a separate distribution-based breach theory beyond the operative counterclaim. On Counterclaim IV, M&N relies on transition communications disclosing the end of the dealer relationship and disputes likely confusion, B&O's injury in fact, loss of money or property, and causation. On Counterclaim V, M&N relies on the Schedule 24, waiver, termination-notice, and California franchise-law evidence described above. Dkt. 169 at 21–25.

M&N seeks the damages described in Dkt. 169 at 30–31, totaling $13,167,000: lost profits plus interest of $3,790,000; lost business value of $7,972,000; and lost store expansion opportunity of $1,405,000. The $3,790,000 category includes claimed interest; any jury damages award and any prejudgment interest awarded by the Court must avoid duplication. M&N also seeks any other relief available on its pleaded claims, subject to the Court's evidentiary and damages rulings and without duplicate recovery.

**Defendants:**

a) Defendants plan to pursue the following counterclaims and affirmative defenses:

<u>Counterclaims</u>

i. Counterclaim 1: Breach of Contract

ii. Counterclaim 2: Breach of Contract for Unauthorized Sales

iii. Counterclaim 4: Violation of the California Business & Professions Code SS 17200, et seq

iv. Counterclaim 5: Declaratory Judgment

<u>Affirmative Defenses</u>

i. Affirmative Defense 1: Unclean Hands

ii. Affirmative Defense 2: M&N Has Not Sustained Damages

- Breach of Contract
- Breach of Implied Covenant
- Violation of CFIL
- Trade Libel

iii. Affirmative Defense 3: M&N's Damages Were Not Proximately or Legally Caused by B&O

- Breach of Contract
- Breach of Implied Covenant
- Violation of CFIL
- Trade Libel

iv. Affirmative Defense 4: M&N's Non-Performance/Prior Material Breach

v. Affirmative Defense 5: M&N's Lost Profit and Business Value Damages Are Barred by Section 13.6 of the Agreement

b) The elements required to establish Defendants' counterclaims and affirmative defenses are:

<u>Counterclaims</u>

*i. Counterclaim 1: Breach of Contract*

The required elements for breach of contract that B&O must show by a preponderance of the evidence are:

1. That Bang & Olufsen and M&N entered into a contract;
2. That M&N failed to do something that the contract required it to do;
3. That Bang & Olufsen was harmed; and
4. That M&N's breach of contract was a substantial factor in causing Bang & Olufsen's harm.

*See* CACI No. 303; *see also Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, CV 18-0517 DSF (GJSx), 2022 WL 1601389, at *4 (C.D. Cal. Feb. 8, 2022) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

*ii. Counterclaim 2: Breach of Contract for Unauthorized Sales*

The required elements for breach of contract that B&O must show by a preponderance of the evidence are:

1. That Bang & Olufsen and M&N entered into a contract;
2. That M&N failed to do something that the contract required it to do;
3. That Bang & Olufsen was harmed; and
4. That M&N's breach of contract was a substantial factor in causing Bang & Olufsen's harm.

*See* CACI No. 303; *see also Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, CV 18-0517 DSF (GJSx), 2022 WL 1601389, at *4 (C.D. Cal. Feb. 8, 2022) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

*iii. Counterclaim 4: Violation of the California Business & Professions Code SS 17200, et seq*

In order to succeed on this counterclaim, B&O must show, by a preponderance of the evidence, that members of the public were likely to be confused or deceived by the business practices of M&N. *See* Cal. Bus. & Prof. § 17200; *see also Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983); Kimberly C. Simmons, J.D., 61 Cal. Jur. 3d Unfair Competition § 5 (2026).

*iv. Counterclaim 5: Declaratory Judgment*

For declaratory relief, B&O must show by a preponderance of the evidence that there is an actual, present controversy between the parties relating to the legal rights and duties of the respective parties, and that the controversy is sufficiently concrete to warrant judicial intervention. *See Dias v. Spartan Micro, Inc.*, No. 822CV00834JVSKES, 2022 WL 17216820, at *8 (C.D. Cal. Sept. 14, 2022); Cal. Civ. Code § 1060; 28 U.S.C. § 2201.

<u>Affirmative Defenses</u>

i. Affirmative Defense 1: Unclean Hands

To succeed on this affirmative defense, Bang & Olufsen must prove, by clear and convincing evidence, all of the following:

1. That M&N engaged in inequitable conduct; and
2. That the inequitable conduct has an immediate and necessary relation to the transaction or subject matter of the claim on which M&N seeks relief.

*See* Cal. Civ. Code § 3517; *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 933 (9th Cir. 2014)

ii. *Affirmative Defense 2: M&N Has Not Sustained Damages*

- Breach of Contract

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that it sustained damages as a result of B&O's

alleged breach. See CACI No. 303; see also Cal. Civ. Code § 3300; Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014) ("To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff."); Ehret v. Uber Techs., Inc., 68 F. Supp. 3d 1121, 1139 (N.D. Cal. 2014) ("Where a plaintiff has failed to allege that the defendant's breach has caused her to suffer any damage, a breach of contract action for damages will not lie.").

- Breach of Implied Covenant

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that it sustained damages as a result of B&O's alleged breach of the implied covenant. See CACI No. 325.

- Violation of CFIL

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that it suffered actual financial harm as a result of B&O's alleged violation. See Cal. Corp. Code §§ 31110, 31119(a), 31300.

- Trade Libel

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that it sustained special damages as a result of B&O's alleged trade libel. See CACI No. 1731; KVC Grp., LLC v. Reliable Capital Sols. LLC, 8:24-cv-01208-DSF-Ex, 2025 WL 2377038, at *6 (C.D. Cal. Aug. 8, 2025) (Fischer, J.).

*iii. Affirmative Defense 3: M&N's Damages Were Not Proximately or Legally Caused by B&O*

- Breach of Contract

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of the evidence, that B&O's alleged breach was a substantial factor in causing M&N's harm. See CACI No. 303; see also Troyk v. Farmers Group, Inc., 171 Cal. App. 4th 1305, 1352 (2009) ("Implicit in the element of damage is that the

defendant's breach caused the plaintiff's damages); US Ecology, Inc. v. State of California, 129 Cal. App. 4th 887, 909 (2005) ("Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain. A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage.") (internal citations omitted).

- Breach of Implied Covenant

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that M&N was harmed by B&O's conduct. See CACI No. 325.

- Violation of CFIL

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of the evidence, that B&O's alleged violation of the CFIL was a substantial factor in causing M&N's actual financial harm. See Cal. Corp. Code §§ 31110, 31119(a), 31300.

- Trade Libel

To succeed on this affirmative defense, the evidence must show that M&N did not prove, by a preponderance of that evidence, that B&O's conduct was a substantial factor in causing M&N's harm, specifically, special damages. See CACI No. 1731; see also KVC Grp., LLC v. Reliable Capital Sols. LLC, 8:24-cv-01208-DSF-Ex, 2025 WL 2377038, at *6 (C.D. Cal. Aug. 8, 2025) (Fischer, J.).

*iv. Affirmative Defense 4: M&N's Non-Performance/Prior Material Breach*

To succeed on this affirmative defense, B&O must prove: (1) that M&N's failure to perform under the contract constitutes a material breach of the contract; and, and (2) that the breach bars M&N from recovering on its claims.

*See* BAJI 10.86; *see also Oracle Am., Inc. v. Innovative Tech. Distrib. LLC*, 5:11-CV-01043-LHK, 2012 WL 4122813, at *20 (N.D. Cal. Sept. 18, 2012) (" . . . a plaintiff

who has himself materially breached or failed to perform a contract may not pursue a breach of contract action against the other party to the agreement.”); *Brown v. Dillard’s, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (“[H]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.” (internal citations omitted); omitted)); *Gilliam v. Bank of Am., N.A.*, 8:17-cv-01296-DOC-JPR, 2019 WL 1063399, at *8 (C.D. Cal. Feb. 20, 2019) (granting summary judgment where plaintiffs failed to establish contractual performance); *Biegler v. Nat’l Gen. Ins. Co.,* 2:22-cv-00560-MCE-DMC, 2023 WL 8622324, at *4-5 (E.D. Cal. Dec. 13, 2023) (same); *Brown v. Grimes*, 192 Cal. App. 4th 265, 277-278 (2011) (“When a party’s failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract.”).

*v. Affirmative Defense 5: M&N’s Lost Profit and Business Value Damages Are Barred by Section 13.6 of the Agreement*

To succeed on this affirmative defense, B&O must prove:

1. That the Agreement contains a valid and enforceable limitation of liability provision in Paragraph 13.6 that, by its terms, excludes recovery for present or prospective lost profits and lost business value arising from the expiration or termination of the Agreement;
2. That the provision was the product of mutual assent between sophisticated commercial parties and is not unconscionable or otherwise unenforceable; and
3. That M&N’s claimed lost profit and business value damages fall within the scope of Paragraph 13.6’s prohibition on recovery for present or prospective profits.

*See* Agreement § 13.6; *see also* CACI No. 350 (Introduction to Contract Damages); Cal. Civ. Code § 1668; *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (enforcing limitation-of-liability clause in the parties’ contract that barred recovery of certain damages for breach of contract and limited total liability); *TSI*

*USA LLC v. Uber Techs., Inc.*, No. 17-cv-03536-HSG, 2020 WL 5257873, at *4–5 (N.D. Cal. Sept. 3, 2020) (enforcing contractual limitation-of-liability provision and holding that it capped the plaintiff's contractual damages).

c) In brief, the key evidence Defendants rely on for each counterclaim and affirmative defense is:

Counterclaims

*i. Counterclaim 1: Breach of Contract*

B&O's key evidence on this counterclaim will show that the parties entered into the Agreement under which M&N was obligated to pay invoices within 35 days (Paragraph 4.1(b) and Schedule 5); that B&O repeatedly notified M&N of its payment non-compliance from January 2023 through February 2024; that M&N made 166 payments more than 30 days past due, 39 of which were more than 60 days overdue, resulting in an outstanding invoice balance of $298,905.62 by May 18, 2023; that the delinquency was so severe B&O extended M&N a loan to cover its past-due amounts; that M&N's own bookkeeper, Ms. Chang, admitted M&N had "a hard time keeping up with payments"; and that M&N's repeated breaches led to termination of the Agreement and left B&O without an authorized monobrand dealer in California for over two years. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*ii. Counterclaim 2: Breach of Contract for Unauthorized Sales*

B&O's key evidence on this counterclaim will show that the parties entered into the Agreement under which M&N received a non-exclusive right to use B&O's intellectual property and to sell B&O products to end-users within a defined geographic territory and only from physical stores; that after B&O properly terminated the Agreement, M&N continued to use B&O's intellectual property, held itself out as an authorized reseller, and sold B&O products—including through eBay.com—in violation of Paragraphs 7.1, 14.1(ii), 14.1(iii), 16.1, 16.2, and Schedule 3; that B&O issued a cease-and-desist letter demanding M&N stop all unauthorized use of B&O's marks; that M&N

rebranded its storefronts as "Sound & Shades" and devised a plan to keep B&O out of the California market while continuing to sell B&O products without authorization; that M&N accepted a $178,000 customer deposit for B&O products it never delivered and then directed those customers to B&O for recourse; that M&N sold over $2.2 million of B&O products through at least January 6, 2026, nearly seventeen months post-termination; that, per the Crockett Report, M&N's post-termination sales totaled 1,436 transactions and $2.4 million in revenue, yielding liquidated damages under Paragraph 16.2 ranging from approximately $11 million to nearly $16 million; that M&N refused to respond to B&O's requests to exercise its contractual right to repurchase remaining inventory under Schedule 25, instead selling the inventory to third parties; and that M&N sold B&O products at heavy discounts to MSRP, undermining B&O's brand value and pricing policies. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*iii. Counterclaim 4: Violation of the California Business & Professions Code §§ 17200, et seq*

B&O's key evidence on this counterclaim will show that after B&O terminated the Agreement, M&N continued to hold itself out as an authorized B&O retailer and sold B&O products—both as M&N and through its d/b/a Sound & Shades—without authorization, including through the unauthorized sales channel eBay.com; that M&N continued to use B&O's marks in customer communications, its domain name, and employee email addresses, creating the impression that M&N remained an authorized dealer and causing specific instances of actual consumer confusion; that when customers sought recourse for non-functioning products or undelivered orders, M&N directed those customers to B&O; and that Mr. Junk attacked B&O in the Danish press, giving numerous interviews to Danish media outlets in an effort to damage B&O's reputation in its home

market. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*iv. Counterclaim 5: Declaratory Judgment*

B&O's key evidence on this counterclaim will show that M&N repeatedly failed to pay its invoices on time in breach of the Agreement, including Schedule 5 and Schedule 24; that B&O notified M&N no fewer than 15 times of its payment noncompliance from January 2023 through February 2024; that M&N made 166 payments more than 30 days past due, including 39 payments more than 60 days overdue, resulting in a delinquency of nearly $300,000 by May 2023; that the delinquency was so severe B&O was forced to extend M&N a loan, yet M&N continued to fall behind; that in the fall of 2023, M&N notified B&O of its intent to seek a buyer for its five stores; that B&O properly terminated the Agreement pursuant to CFRA Section 20021(g) and Paragraph 13.3 and Schedule 24; that M&N's claimed lost profit and business value damages are expressly barred by the bilateral limitation of liability in Paragraph 13.6; that M&N's own bookkeeper, Ms. Chang, admitted M&N had "a hard time keeping up with payments"; that the Agreement's anti-waiver provision at Section 18.5 precludes M&N's waiver argument; and that M&N itself demanded the amendment to Schedule 24, negotiated it with counsel, and relied upon it as the "Current Agreement." A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

<u>Affirmative Defenses</u>

*i. Affirmative Defense 1: Unclean Hands*

B&O's key evidence on this affirmative defense will show that B&O repeatedly demanded a full inventory list so it could value M&N's inventory and make a bona fide repurchase offer; that M&N refused to provide the requisite inventory information after three separate requests; that M&N then sold the very inventory it now claims B&O was obligated to repurchase, preventing B&O from exercising any repurchase right and effectively seeking a double recovery; that M&N sold 1,436 units of B&O products post-termination for approximately $2.4 million in revenue at an average discount of 28%

below MSRP, undermining B&O's brand value and pricing policies; and that M&N's post-termination conduct caused specific consumer harms, including customers who sought recourse from B&O for non-functioning products or undelivered orders. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*ii. Affirmative Defense 2: M&N Has Not Sustained Damages*

- Breach of Contract
- Breach of Implied Covenant
- Violation of CFIL
- Trade Libel

B&O's key evidence on this affirmative defense will show that B&O's termination was expressly authorized by the CFRA and the Agreement; that M&N repeatedly failed to pay its invoices on time in breach of Schedule 5 and Schedule 24; that B&O notified M&N no fewer than 15 times of its payment noncompliance from January 2023 through February 2024; that M&N made 166 payments more than 30 days past due, including 39 more than 60 days overdue, resulting in a delinquency of nearly $300,000 by May 2023; that B&O was forced to extend M&N a loan, yet M&N continued to fall behind; that in the fall of 2023 M&N sought a buyer for its five stores; that B&O properly terminated the Agreement pursuant to CFRA Section 20021(g) and Paragraph 13.3 and Schedule 24; that M&N's claimed lost profit and business value damages are barred by Paragraph 13.6; that Ms. Chang admitted M&N had "a hard time keeping up with payments"; that the anti-waiver provision at Section 18.5 precludes M&N's waiver argument; that M&N itself demanded, negotiated, and relied upon the Schedule 24 amendment; that M&N failed to perform its own contractual payment obligations; that M&N refused to provide inventory information despite B&O's three written requests, preventing any repurchase; that M&N sold over $2.2 million of B&O inventory post-termination, extinguishing any repurchase right under Section 20022(g); that B&O is exempt from repurchase under Section 20022(d) because M&N retains control of at least three retail locations through

Sound & Shades; that M&N cannot demonstrate causation, reliance, or cognizable damages arising from the alleged CFIL violation; that M&N was independently represented by counsel and would have entered into the Agreement regardless of franchise disclosure documents; that B&O acted in good faith throughout the relationship; that B&O's "performance issues" statement was substantially true; that M&N cannot establish special damages for trade libel; and that M&N has no evidence of oppression, malice, or fraud. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*iii. Affirmative Defense 3: M&N's Damages Were Not Proximately or Legally Caused by B&O*

- Breach of Contract
- Breach of Implied Covenant
- Violation of CFIL
- Trade Libel

In support of its causation defense, B&O will rely on key facts and evidence outlined *supra* in *Affirmative Defense 2* to demonstrate that any harm or damages allegedly sustained by M&N were not caused by B&O's alleged conduct. In addition, B&O will introduce testimony and evidence of intervening and superseding causes that independently caused or contributed to M&N's alleged harm, including M&N's own breaches of the Agreement, M&N's own post-termination misconduct, M&N's stated intent to seek a buyer for its stores in Fall 2023 (before termination), and M&N's failure to mitigate its alleged losses.

*iv. Affirmative Defense 4: M&N's Non-Performance/Prior Material Breach*

In support of its non-performance/material breach defense, B&O will rely on the key facts and evidence outlined *supra* in *Affirmative Defense 2,* as well as evidence that B&O does not owe any payments or unpaid balance to M&N under the Agreement, including under Schedule 5f; that M&N's accounting and declaratory relief claims

depend entirely on the premise that termination was improper, which it was not; that M&N's own material breach bars its requested relief; that B&O's lawful termination precludes M&N from demonstrating irreparable injury warranting permanent injunctive relief; that M&N has adequate remedies at law; that the balance of hardships does not favor M&N given its own repeated breaches and post-termination conduct; and that M&N's request for injunctive relief is moot because the Agreement has been terminated, M&N now operates under the name Sound & Shades, and M&N has quantified its claimed losses in monetary terms. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

*v. Affirmative Defense 5: M&N's Lost Profit and Business Value Damages Are Barred by Section 13.6 of the Agreement*

In support of its limitation of liability defense, B&O will rely on the bilateral limitation of liability in Paragraph 13.6 that expressly precludes M&N's claimed lost profit and business value damages. M&N has never challenged Paragraph 13.6 as unconscionable. B&O's key evidence will show that M&N was represented by independent counsel when it entered into the Agreement; that M&N negotiated extensively over the course of months and demanded and received special contract terms unique to M&N, including Schedule 9 (Right of First Offer), Schedule 24 (Termination Notice Period), and Schedule 27 (Special Terms); that M&N had already been in a years-long business relationship with B&O and had entered into two prior contracts containing similar terms; that M&N requested additional changes to the Schedules during the term of the Agreement; that the challenged provisions are reasonable, standard commercial terms; that the specific back-and-forth negotiations, including correspondence, draft redlines, and emails, demonstrate M&N had a meaningful opportunity to negotiate the very terms it now challenges; that the limitation of liability and other provisions are bilateral and apply equally to both parties; and that comparable provisions are standard

in the luxury retail and franchise industries. A detailed itemization of this evidence is set forth in B&O's Memorandum of Contentions of Fact and Law (ECF 162).

8. In view of the claims, counterclaims, and defenses identified above, the following ultimate issues remain for resolution:

Whether the later Schedule 24 containing the late-payment termination provision on which B&O relies became part of the Framework Agreement in 2021; whether Section 18.5’s anti-waiver provision precludes M&N’s waiver theory or limits its scope; whether B&O waived strict invoice payment timing; and, if so, whether B&O effectively reinstated strict compliance before termination, to the extent reinstatement was necessary.

Whether M&N performed its contractual obligations or was excused, whether B&O breached the Framework Agreement by purporting to terminate it, and whether that breach caused compensable harm to M&N.

Whether the parties’ relationship was a franchise under applicable California law, whether B&O terminated the Agreement pursuant to Cal. Bus. Prof. Code Section 20021 (g), and whether B&O’s February 14 and May 8, 2024 termination notices complied with the Framework Agreement or the California Franchise Relations Act.

If the relationship was a franchise and termination was lawful, whether B&O owed a repurchase duty for qualifying remaining property under Business and Professions Code section 20022; whether this repurchase duty did not apply because pursuant to subsection (d) M&N retained control of the principal place of the franchise business; whether certain items were excluded from this repurchase duty because pursuant to subsection (g) M&N sold inventory, supplies, equipment, fixtures, or furnishings between the date of the notice of termination or nonrenewal, and the cessation of operation of the franchise business, and, separately, whether M&N performed or was excused; whether any conditions for B&O’s performance occurred or were excused, including whether M&N provided the requisite inventory information B&O needed to make a repurchase offer; and whether B&O unfairly interfered with M&N’s contractual benefit in bad faith, causing harm.

Whether B&O offered or sold an unregistered franchise or failed to make required pre-sale disclosures; whether either violation caused M&N actual monetary loss for its damages claim; and what relief, if any, follows under the California Franchise Investment Law.

Whether B&O made a false statement disparaging M&N's business with knowledge of falsity or reckless disregard; whether B&O's characterization of M&N's "performance issues" was substantially true; whether someone else acted in reliance on the statement; and whether B&O's conduct was a substantial factor in causing M&N direct financial harm.

Whether M&N is entitled to punitive damages on its CFIL or trade libel claim under the clear-and-convincing and entity-liability requirements of Civil Code section 3294.

Whether BOA owes M&N revenue sharing payments under Schedule 5f and what accounting or declaratory relief, if any, is warranted.

Whether M&N has proved its claims and whether an applicable defense pleaded by B&O limits or bars relief, including M&N's unclean hands in connection with the post-termination inventory, M&N's material breach, M&N's failure to prove damages and/or causation, and/or the limitations of liability contained in the Framework Agreement.

Whether B&O performed or was excused, whether M&N breached an invoice-payment obligation, and whether B&O suffered harm substantially caused by that breach on Counterclaim I.

Whether B&O performed or was excused, whether M&N breached a restriction by selling B&O's products on the Internet, and whether B&O suffered harm caused by that breach on Counterclaim II.

Whether B&O lawfully and effectively terminated the Agreement, whether B&O performed or was excused, whether M&N breached a post-termination restriction by

selling B&O products post-termination, and whether B&O suffered harm caused by that breach on Counterclaim II.

Whether B&O is entitled to the contractually-provided liquidated damages in connection with Counterclaim II.

Whether M&N's challenged conduct was likely to deceive or confuse the public and whether B&O is entitled to equitable relief on Counterclaim IV.

Whether B&O is entitled to a declaration concerning the validity and effect of its termination of the Framework Agreement.

Whether B&O has proved its counterclaims and whether an applicable defense pleaded by M&N limits or bars relief, including B&O's breach, waiver, failure to mitigate, protected speech, or California franchise-law defenses.

What categories and amounts of damages are recoverable on the parties' claims and counterclaims, without duplicate recovery.

Whether the provisions challenged in M&N's Count V, including Sections 12.1 and 16.2, are unenforceable under Civil Code section 1670.5; whether Section 16.2's liquidated-damages provision is an unenforceable penalty; what damages restrictions, if any, apply; and what accounting, declaratory, or injunctive relief the Court should award. M&N contends the jury should decide overlapping termination facts before the Court resolves equitable or declaratory relief dependent on them, subject to the Court's rulings.

9. All discovery is complete.

10. All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below. The parties are continuing to meet and confer regarding the exhibit list and exhibit objections and anticipate filing a revised joint exhibit list and any remaining objections before the final pretrial conference. Each objection and its grounds will be stated separately by exhibit in the final proposed order under L.R. 16-6.3. Until that process is

complete, omission of an objection from this working draft is not a waiver or agreement that an exhibit is admissible.

The parties each respectfully reserve the right to supplement and revise the exhibit list before or during trial as may prove necessary. The parties' respective objections to specific exhibits and the grounds for each objection remain subject to the ongoing meet and confer and will be identified by exhibit number for inclusion in the final proposed order.

11. Witness lists of the parties have been filed with the Court.

The parties each respectfully reserve the right to supplement and revise the witness list before or during trial as may prove necessary.

12. The following law and motion matters and motions in limine, and no others, are pending or contemplated: The parties' resepective motions in limine were filed with the Court on September 16, 2026; oppositions and/or stipulations were filed on September 23, 2026.

13. Bifurcation of the following issues for trial is ordered. None.

14. The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

Dated: ____________________

____________________________________
HONORABLE DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

DATED: September 23, 2026

**THE FREEDMAN FIRM PC**

By: */s/*

Michael G. Freedman
Attorney for Plaintiff and
Counterclaim-Defendant
M&N LUXURY AV, LLC

**K&L GATES LLP**

By: */s/**

Johnathan A. Coleman
Christopher S. Finnerty (*Pro Hac Vice*)
Lindsay S. Bishop (*Pro Hac Vice*)
John C. Blessington (*Pro Hac Vice*)
*Attorneys for Defendants and*
*Counterclaim-Plaintiffs*

*Pursuant to L.R.5-4.3,4, I attest that that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Michael G. Freedman*

Michael G. Freedman